**GENERAL MOTORS CORPORATION & Joe Taylor Stone, Appellants,**

v.

**Sylvia CASTANEDA, Appellee.**

**No. 04–96–00800–CV.**

Court of Appeals of Texas, San Antonio.

Sept. 16, 1998.

Opinion Overruling Rehearing Nov. 4, 1998.

Rick Harrison, Harrison & Rial, L.L.P., Austin, Darrell Barger, Barger & Moss, L.L.P., Corpus Christi, David M. Heibron, Leslie G. Landau, Nora Cregan, McCutchen, Doyle, Brown & Enersen, L.L.P., San Francisco, Scott D. Lassetter, Gregory S. Coleman, Weil, Gotshal & Manges, L.L.P., Houston, Larry A. Matthys, Vaughan E. Waters, Thornton, Summers, Biechlin, Dunham & Brown, L.C., Corpus Christi, for Appellant.

Kathryn Snapka, Law Offices of Kathryn Snapka, Corpus Christi, Mike A. Hatchell, Greg Smith, Randall J. Cook, Molly H. Hatc-

hell, Ramey & Flock, P.C., Tyler, for Appellee.

Before RICKHOFF, GREEN, and BUTTS,[1] JJ.

## OPINION

GREEN, Justice.

In this personal injury and products liability case, General Motors Corporation (GM) and Joe Taylor Stone appeal the trial court's judgment for Sylvia Castaneda, who was injured in an accident with Stone while driving a car manufactured by GM. Among other issues raised by its six points of error, GM challenges venue and the legal sufficiency of the evidence to support both causation and the jury's finding of no comparative negligence on the part of Sylvia; Stone also questions venue. Although we find the evidence legally sufficient to support the jury's verdict, we reverse and remand because venue in Duval County was improper.

### BACKGROUND

On the evening of February 7, 1992, Sylvia was involved in an automobile accident with Stone. Sylvia later filed suit against Stone and GM, seeking $10 million in damages. Against Stone, she asserted a negligence claim. She charged GM with designing a defective product—the door latch on the 1984 Buick she drove—and alleged that the car was not crashworthy as a result of its latch design. She maintained that her injuries from the crash were enhanced when the door latch failed, thereby compromising the car's structural integrity and causing her severe head injuries. The jury agreed with Sylvia and awarded her the $10 million judgment she sought. It further assigned fault along the following percentages: seventy-five by GM, twenty-five by Stone, and zero by Sylvia.

### LEGAL SUFFICIENCY OF THE EVIDENCE

█ We begin our analysis by reviewing the legal sufficiency of the evidence. *See* TEX.R.APP. P. 43.3. GM contends the evidence is insufficient to support the jury's

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

findings on causation and comparative negligence. To challenge the legal sufficiency of the finding of causation—an adverse finding on an issue on which GM did not have the burden of proof—GM must demonstrate there is no evidence to support that finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). In deciding a "no evidence" issue, we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Formosa Plastics Corp. USA v. Presidio Eng'rs*, 960 S.W.2d 41, 48 (Tex. 1998); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). We must uphold the trial court's finding if, in our review, we encounter any evidence of probative force to support it. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

■ To successfully attack the legal sufficiency of the jury's comparative negligence finding—an adverse finding on which GM bore the burden of proof—GM must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Texas 1989). To review this "matter of law" challenge, we use a two-part test: (1) we first examine the entire record for evidence supporting the jury's finding, while ignoring all contrary evidence; and (2) if we encounter no evidence to support the jury's answer, we examine the record to inquire whether the contrary proposition is established as a matter of law. *Id.*

### 1. Causation

■ GM argues that judgment should be rendered in its favor because there was no evidence at trial that a defect in the Buick's door latch caused any injury to Sylvia. In crashworthiness cases, the alleged defect need not be the cause of the collision that precipitated the injury; but the alleged defect must have caused or enhanced the injury. *See Turner v. General Motors Corp.*, 584 S.W.2d 844, 848 (Tex.1979). Citing a myriad of authority from other jurisdictions, GM maintains Sylvia was required to demonstrate causation by "quantify[ing] with precision the degree of enhancement" by proving (1) a safer alternative design; (2) what injuries, if any, would have resulted had the safer alternative design been used; and (3) to what extent the enhanced injuries were attributable to the defective design.[2]

■ The burden of proof is not as onerous as GM contends. In Texas, a plaintiff's evidentiary burden in a crashworthiness case is much the same as its burden in any other strict products liability case. *See Turner*, 584 S.W.2d at 848. To decide whether a product is defectively designed, the jury balances the utility of the product against the risk associated with its use. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex.1997); *Turner*, 584 S.W.2d at 847.[3] Factors which the jury may consider in arriving at its decision include the existence of a safer alternative design, the product's usefulness and desirability, the likelihood and gravity of injury from its use, the ability to eliminate the risk without seriously increasing the product's usefulness or cost, and the expectations of the ordinary consumer. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 746 & n. 2 (Tex.1980).

■ Unlike strict products liability cases where the alleged defect causes the accident underlying the injury, in crashworthiness cases the jury apportions responsibility between all whose action or products combine to cause the entirety of the plaintiff's injuries. *Duncan v. Cessna Aircraft*

---

2. GM also argues that the expert testimony produced by Sylvia to support her defective design claim is "no evidence" for the purpose of our sufficiency review because it was speculative scientific testimony, not supported by the physical evidence. *See Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d at 711. While we agree that unreliable scientific evidence is not evidence, we are precluded from considering this argument because GM did not preserve it for our review. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex.1998) (holding that a party must object to the evidence before trial or when it is offered).

3. We note, however, that had Sylvia's cause of action accrued on or after September 1, 1993, her burden of proof would have more closely resembled GM's test requiring proof of a safer alternative design. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 82.005 (Vernon 1997).

*Co.,* 665 S.W.2d 414, 428 (Tex.1984). The defect need only be a producing cause of the injury; if two or more causes produce a single injury, the jury may attribute the injury to any or all of the causes. *See id.; see also Shipp v. General Motors Corp.,* 750 F.2d 418, 425 (5th Cir.1985) (applying Texas law). The burden lies with the defendants to allocate their respective responsibilities. *Duncan,* 665 S.W.2d at 429. Accordingly, Sylvia could recover all of her damages from either GM or Stone; the paying defendant would then have a right of contribution against the other. *See id.*

■■■ We hold that the record contains more than a scintilla of evidence to support the jury's finding on causation. Sylvia presented expert testimony that the door latch failed because of its defective design, causing her door to open and compromising the car's structural integrity. Fred Arndt, an engineering consultant, deduced that the door had opened during the accident based on his observation that the door's panel measured about fourteen inches longer than the door opening. Furthermore, he reasoned, if the door had remained shut, the force of the load upon impact would have transferred across the door, causing it to buckle or bend. He observed no such buckling. Finally, he concluded that the tire marks made by the truck on the passenger-side car doors most likely occurred when Sylvia's door opened.

In Arndt's opinion, the door opened during impact when the force of the collision caused the striker of the latch to rotate outward and break the latch.[4] The door did not swing wide open during impact but was simply ajar. He further reasoned that had the door remained closed throughout the collision, the force of the impact would have been transmitted across the driver's side through the door. Because the door opened, the structural integrity of the car was compromised. Arndt said this caused the A pillar, the metal support between the windshield and the driver's side door, to shift further into the pas-

senger compartment, and Sylvia hit the A pillar with her head.

James Foley and Robert Culver, former GM employees, studied data collected from cases where doors opened during collision. This study focused on the 1980 X-body cars. The 1984 Buick that Sylvia drove was also an X model. Culver described the problem with the latch as "fork bolt detent bypass." Jack Martens, an automotive engineering consultant, further explained that during an accident like Sylvia's, the force on the driver's side door drives the door rearward. At first, the latch resists, but then twists under pressure. This rotational force on the striker distorts the fork bolt in the door latch, permitting a bypass of the detent lever in the latch and creating a gap in the latch jaws just large enough for the striker to escape from the latch, thereby allowing the door to open.

Sylvia further presented evidence that the latch's failure ultimately led to her serious injuries. Martens testified that Sylvia would have had "adequate protection" from the injuries she sustained had the A pillar not migrated the extent that it did. Anthony Sances, Jr., a professor of biomechanics and biomedical engineering, examined the impact of the accident on Sylvia. In his opinion, Sylvia moved forward and to the left inside the passenger compartment upon impact, while the A pillar moved towards Sylvia. Consequently, the left side of Sylvia's head hit the A pillar. Sances calculated that the A pillar shifted back into the passenger compartment to a position six to seven inches away from where Sylvia would be in a normally-seated position. He reasoned that if the A pillar had moved back only a few inches, Sylvia would not have hit her head. Fred Arndt concurred with this opinion.

We also note that the jury had before it sufficient evidence for it to balance the product's utility with its risk and to find the design of the latch defective. James Foley

---

4. Three components comprise GM's Type III latch—the type installed in the 1984 Buick: the fork bolt, detent lever, and striker. The striker is the rod anchored to the B pillar—the metal support between the front and rear car doors. The fork bolt is a mouth-shaped piece of metal that fits around the striker. The detent lever engages the fork bolt during the latch's operation. The fork bolt latches in one of two ways: in the primary position, it fully latches; in the secondary, it is latched only in a "safety" position.

testified that GM first became aware of possible latch failure with the 1978 or 1979 model of the Chevrolet Chevette. Jack Martens testified that in 1986, GM introduced a modified latch, equipped with a support plate that made the latch stronger. Martens recalled that this new latch was first available as a service part in 1988 or 1989. At that time, all unmodified latches were ordered purged from GM's service parts system; however, none of the models equipped with the old latch design were recalled for installation of the modified latch. Charles Lee, an engineer whose work involved GM latches from 1975 to 1982, testified that the additional cost-per-latch of installing the support plates in older models was approximately twenty-five cents. In Martens' opinion, if Sylvia's Buick had been equipped with the modified latch, her door would not have opened and Sylvia would have had better protection in the passenger compartment. In light of all this evidence, we overrule GM's challenge to the legal sufficiency of the evidence of causation.

## 2. Comparative Negligence

■ GM maintains it conclusively proved that Sylvia caused her own injuries and that there is no evidence to support the jury's finding that Sylvia was not comparatively negligent. GM relies on Arndt's testimony that Sylvia was speeding at the time of the accident to argue that Sylvia's injuries were attributable, at least in part, to her negligent operation of the Buick. Arndt estimated that Sylvia was driving between thirty-seven and forty-two miles per hour at the time of impact. The speed limit was 35 miles per hour. Arndt conceded that driving over the speed limit would qualify as failure to exercise ordinary care, and that the severity of a given accident is proportionate to a vehicle's rate of speed. He was reluctant, however, to conclude that Sylvia's speeding was a producing cause of her injuries.

Sylvia produced evidence, nevertheless, that she was complying with the speed limit just before the crash. Robert testified that he and Sylvia passed a patrol car as they drove down Staples. He warned Sylvia to slow down to avoid getting a traffic ticket.

Robert did not recall Sylvia accelerating before they were hit by Stone.

Although GM elicited evidence that Sylvia may have been speeding at the time of the accident, the jury was also presented with evidence from which it could have reasonably inferred that Sylvia was not speeding. Accordingly, we overrule GM's contention that Sylvia was conclusively proved to be negligent.

### VENUE

Having overruled the rendition points of error, we next consider the propriety of venue in Duval County. To answer this question, we look at the entire record, including the actual trial. *See Ruiz v. Conoco,* 868 S.W.2d 752, 758 (Tex.1993). If we find any probative evidence that GM maintained an agency or had a representative in Duval County, even if the preponderance of the evidence is to the contrary, we must defer to the trial court's determination that venue was proper in the county of suit. *See Ford Motor Co. v. Miles,* 967 S.W.2d 377, 380 (Tex.1998). If the record is devoid of any such evidence, we must remand the case to be transferred to a county of proper venue. *Id.*

■ The venue facts in this case, which bear a striking resemblance to those in *Miles,* do not support venue in Duval County. Both Sylvia and Stone were residents of Nueces County, where their accident occurred. The only fact tying venue to Duval County was the existence of a GM dealership, Freer Motor Company, within the county. Sylvia characterized this dealership as GM's representative for the purposes of the statutory provision governing this dispute. *See* TEX. CIV. PRAC. & REM.CODE § 15.037 (Vernon 1986), *repealed by,* Acts 1995, 74th Leg. R.S., ch. 138, § 10, 1995 Tex. Gen. Laws 978, 981. Mere evidence that an automobile dealership is located within a particular county is not evidence that that dealership is an agent or representative of the manufacturer whose product it sells. *See Miles,* 967 S.W.2d at 382. Accordingly, there is no evidence to support the trial court's conclusion that Freer Motor Company was the agent or

representative for GM as contemplated in the former Tex. Civ. Prac. & Rem.Code § 15.037.

 Sylvia argues that GM and Stone waived the venue issue by failing to request a timely hearing on the motions to transfer, and by failing to make certain motions subject to their motions to transfer venue. We disagree. Both GM and Stone timely filed their motions to transfer venue and requested a hearing on the issue. GM and Stone's answers and subsequent motions stated they were made subject to the venue motion. Although the venue motion was set and reset for a hearing several times, the evidence indicates the parties understood that the proceedings were subject to the pending venue motion.

We sustain the venue challenge. In light of this disposition, we need not consider the remaining points of error addressing factual sufficiency of the evidence.

### CONCLUSION

We overrule the points of error addressing legal sufficiency of the evidence on the issues of causation and comparative negligence. We reverse and remand, however, on the ground that venue was improper in Duval County, and order the trial court to transfer the case to a county of proper venue.

Dissenting opinion by BUTTS, J.

BUTTS, Justice, dissenting.

I respectfully dissent to the court's disposition of ultimate and controlling evidentiary issues while simultaneously upholding the venue challenge and remanding the case to the proper county for trial.

We are concerned with venue questions. The plaintiff, Sylvia Castaneda, filed a products liability suit against General Motors Corporation (GM) and a negligence action against Joe Taylor Stone, the driver of the car involved in an intersection collision with her car. The jury found GM 75 percent negligent and Stone 25 percent negligent and awarded substantial damages to the plaintiff. The trial court entered judgment for the plaintiff according to the jury verdict.

### The Accident

On the evening of February 7, 1992, in Corpus Christi, the plaintiff borrowed a 1984 Buick Skylark to drive her brother on an errand. Approaching the busy intersection of McArdle Road and Staples, the plaintiff drove north on Staples. Her expert indicated she was driving over the 35–mile speed limit while her brother said she was not speeding. Stone, driving south on Staples, entered the intersection on a green light and began a left turn onto McArdle. The plaintiff also had a green light and, proceeding north, entered the intersection. Stone's Toyota pickup truck struck the Buick and rode up over it, compressing the driver's side. The truck then rotated and its right front tire or tires lifted off the ground. The right front tire left tire marks across both doors of the Buick on the driver's side.

The experts at trial recognized this as a major accident of high severity. The unconscious plaintiff was pinned between the steering wheel, the dash, and the seat. Her brother tried to open her door but failed. The impact had shoved the driver's door past the post between the front and rear doors. The "jaws of life" were used to extricate the plaintiff, who was pinned under the dash. She suffered severe head and body injuries.

Plaintiff sued GM, claiming that GM negligently designed the defective door latch on the Buick and that the defect caused the door to open upon impact, allowing the A pillar, the metal shaft between the windshield and the door, to move inward. She alleged that a different door latch design would have kept the door closed and she would not have struck the car's A pillar. The plaintiff claimed that the design defect caused and greatly enhanced her severe injuries.

GM and Stone bring several points of error. GM contends that venue was improper in Duval County and the court should have transferred venue to Nueces County. GM further argues there was legal and factual insufficiency of the evidence of a door latch defect; conclusive proof of plaintiff's comparative fault; and factual insufficiency of the evidence to support the jury's award of ten million dollars damages.

Stone contends that the trial court erred in denying his motion to transfer venue from Duval County to Nueces County. He also argues the evidence is insufficient to support the jury's award of past and future damages, and the finding of zero comparative responsibility to plaintiff is contrary to the overwhelming weight of the evidence.

The plaintiff alleges in a cross-point that the prejudgment damages were wrongly calculated.

### VENUE

Plaintiff filed suit in Duval County, relying solely on the presence of Freer Motor Company, a General Motors dealership. No relationship was shown to exist between Freer Motor Company and the Corpus Christi Buick Skylark involved in the accident. The defendants timely moved to transfer venue to Nueces County. Specifically, plaintiff alleged that Freer Motor Company was the agency or representative of GM, citing section 15.037 of the Texas Civil Practice and Remedies Code.[1] Section 15.037, in effect at the time of the present suit[2], provided in pertinent part:

> Foreign corporations ... not incorporated by the laws of this state, and doing business in this state, may be sued in any county in which all or a part of the cause of action accrued, or in any county in which the company may have an agency or representative, or in the county in which the principal office of the company may be situated, or, if the defendant corporation has no agent or representative in this state, then in the county in which the plaintiffs or either of them reside.

In *Wilson v. Texas Parks and Wildlife Dept.*, 886 S.W.2d 259 (Tex.1994), it was stated that if a plaintiff's venue choice is not properly challenged through a motion to transfer venue, the propriety of venue is fixed in the county chosen by the plaintiff. *Id.* at 260. If a defendant objects to the plaintiff's venue choice and properly challenges that choice through a motion to transfer venue, the question of proper venue is raised. *Id.* The burden is on the plaintiff to prove that venue is maintainable in the county of suit. But if the plaintiff fails to meet this burden, the trial court must transfer the lawsuit to another designated county of proper venue. *Id.* Section 15.063 of the Civil Practice and Remedies Code specifies that when a proper motion to transfer has been filed, the court shall transfer an action to another county of proper venue if the county in which the action is pending is not a proper county. If the plaintiff files suit in a county where venue does not lie, the plaintiff waives the right to choose and the defendant may have the suit transferred to a proper venue. *Id.; Tieuel v. Southern Pac. Transportation Co.*, 654 S.W.2d 771, 775 (Tex.App.—Houston [14th Dist.] 1983, no writ).

The only question in this case is whether venue was proper in Duval County where this suit was brought and, if not, whether plaintiff's venue choice was properly challenged.

### Standard of Review

Section 15.064 provides, in part:

(b) On appeal from the trial on the merits, if venue was improper it shall in no event be harmless error and shall be reversible error. In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits.

The Supreme Court in *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993), emphasized that the appellate court must conduct an independent review of the entire record to determine whether venue was proper in the ultimate county of suit. If there is probative evidence to support the trial court's determination, the reviewing court will defer to that decision and uphold it. If, however, there is no such evidence, the judgment will be reversed and the case remanded to the trial court with instructions to transfer the case to the county to which transfer was sought. *Id.*

---

1. Unless otherwise indicated, all references are to the venue statutes. Tex. Civ. Prac. & Rem.Code Ann. (Vernon 1986).

2. The Legislature repealed section 15.037, Act of May 5, 1995, 74th Leg., R.S., ch. 138, § 10, 1995 Tex. Gen. Laws 978, 981. *See now*, Tex. Civ. Prac. & Rem.Code § 15.002 (Vernon Supp.1998).

In this case the trial court did not state its reason for denial of the motions to transfer. At the venue hearing, the plaintiff maintained that both defendants had waived their venue motions. We do not know whether the denial was based on waiver or the presence of the dealership in Duval County. Thus, our review of the record necessitates first addressing the question of waiver by GM and Stone of their motions to transfer venue to Nueces County.

The plaintiff argues that waiver occurred when the defendants failed to request a timely hearing on the motions to transfer and that the defendants failed to make certain motions to the court subject to their motions to transfer venue. Further, plaintiff submits that the defendants waived their venue motions since the motions were not determined by the court until 20 months after her petition was filed and just before a trial setting.

The record discloses that GM moved to transfer venue on March 23, 1993, within three weeks after it received service, and this was set for hearing on June 2, 1993. GM's motion was reset for hearing on May 25, 1994, on February 8, 1995, and last on April 13, 1995, when it was heard. Trial on the merits began in April 1996. The record reflects that the three trial attorneys had scheduling conflicts and that plaintiff agreed to some of the resettings. GM continually kept its motion to transfer venue on the docket, setting and resetting it until all attorneys could appear in court for the motion hearing. GM's answer and motions, including continuance, stated that they were made subject to the venue motion.

Plaintiff contends that the parties invoked the court's power over the case several times—referring to discovery motions and a continuance request. However, neither discovery nor seeking protection from discovery, as GM did in this case, waives a transfer motion. TEX. R. CIV. P. 88. *See Petromark Minerals, Inc. v. Buttes Resources Co.,* 633 S.W.2d 657, 659 (Tex.App.—Houston [14th Dist.] 1982, dism. w.o.j.) (taking of depositions does not constitute a waiver, nor does making or answering requests for admissions, nor seeking protection from discovery, nor moving to quash certain requests for admission). Because the trial court must be able to preserve and protect the rights of the parties in regard to discovery permitted prior to the venue hearing without the privilege being waived, the court may make incidental orders in connection therewith. *Id.; see* TEX. R. CIV. P. 88. Therefore, the discovery matters initiated or answered by GM did not create waiver of the venue motion.

The venue motion to transfer may be waived when, prior to the venue hearing, the defendant takes some action inconsistent with its position on the venue issue. *See Petromark Minerals,* 633 S.W.2d at 659. The record fails to disclose that GM waived the transfer motion and hearing by its request for a continuance. Plaintiff agreed to the continuance which removed the case from the June 13, 1994 trial docket. GM requested another hearing date for the venue motion at that time. The record indicates that plaintiff knew the action did not waive the venue hearing. Further, this action was not inconsistent with GM's position on the venue issue. There was no waiver.

Defendant Stone timely filed his motion to transfer venue to Nueces County in May 1993. His amended answer was made subject to the motion to transfer in January 1995. The plaintiff filed her response to the two defendants' motions, recognizing that the motions were currently set for hearing on February 7, 1995. Each defendant's motion was set and reset for the same hearing dates.

In her response, plaintiff averred two grounds for venue to be retained in Duval County: 1) a GM car dealership in Duval County would be an "agency" for venue purposes under *Ruiz* or a "representative" under *General Motors v. Ramsey,* 633 S.W.2d 646 (Tex.App.—Waco 1982, writ dism'd); and 2) Stone waived his right to a venue transfer because he filed a motion for continuance in May 1994 without making it subject to the motion to transfer venue. (Plaintiff did not allege in her response that GM waived its motion to transfer venue.)

Plaintiff maintains that Stone waived his timely venue objections by asking the court for the continuance which plaintiff did not oppose. The record reflects that filing the

continuance motion was not inconsistent with his position regarding the venue objection but was necessary to allow a hearing before trial on the venue motion. Although there might be some evidence of waiver when a defendant moves for continuance, the continued venue objection by Stone, both before and after that, indicates his actions were not inconsistent with his position on the venue issue. And any discovery requests by Stone are not cause for waiver. Tex.R. Civ. P. 88; *Petromark Minerals*, 633 S.W.2d at 659. Stone did not waive his motion to transfer venue.

### "Agency" or "Representative"

It must be determined whether venue was improper in Duval County because GM had no "agency or representative" there. As in *Ruiz*, the only basis on which plaintiff asserts that venue was proper in Duval County is section 15.037 of the Texas Practices and Remedies Code. The *Ruiz* court construed the statute to refer to a situation in which the business of the defendant is, in a more or less regular and permanent form, actually conducted in the county of suit, or one in which a party possessing broad powers from the defendant resides in the county, the one instance being that of "agency" and the other of "representative." *Id.* at 759. Thus, venue against a corporation may be predicated upon the presence in a county of either an agency, a more or less regular and permanent business operation, or a representative with broad powers to act for the corporation. The test is whether the agency or representative has broad discretionary power to act for the corporation. *Id.*

In this case the evidence is undisputed that GM had no principal business operation in Duval County; it had no office there. It is undisputed that the Freer Motor Company had no power or discretion to bind GM contractually. The mere designation of a dealership is not the designation of an agent of GM. *See General Motors Corp. v. Brady*, 477 S.W.2d 385, 390 (Tex.Civ.App.—Tyler 1972, no writ). It was not shown that Freer Motor Company had authority to act for GM. The fact that a dealer may issue a warranty to the buyer does not establish that the dealer had authority to act for the manufacturer. *See Ford Motor Co. v. Miles*, 967 S.W.2d 377, 382 (Tex.1998) (disapproving cases holding or implying that an automobile dealership is the agent or representative of the manufacturer if the dealership performs warranty or recall work).

Plaintiff's venue proof was limited to the fact the Freer Motor Company performed the final inspections for defects of GM vehicles it sold before their delivery to the buyer. But the predelivery inspection would only be a manual or mechanical execution which would not confer agency authority. This activity did not invest the dealer with broad discretion to act for GM. *See General Motors Corp. v. Ewing*, 300 S.W.2d 714, 718 (Tex. Civ.App.—Waco 1957, no writ). Plaintiff's reliance on *General Motors Corp. v. Ramsey* (car dealer's predelivery inspection of cars created an agency or representative) is misplaced since the holding was explicitly disapproved in *Miles*.

Ruiz's plain interpretation of the venue laws leads to only one conclusion: predelivery inspection of cars for defects fails to confer broad power and discretion to act for the GM Corporation. There was no evidence that the GM Corporation conducted business on a regular and permanent basis in Duval County, and no employee of the dealership possessed broad power and discretion to act for GM. *See Atchison, Topeka, & Santa Fe Ry. Co. v. Sanchez*, 890 S.W.2d 793, 795 (Tex.App.—Eastland 1994, op'n on remand). The evidence in *Sanchez* showed that Santa Fe did regular business in the county and had employees performing some limited duties there. However, it was determined that no employee possessed the required broad power and discretion to act for Santa Fe. Thus, the court held that Santa Fe had no agency or representative in the county. Venue in that county was found to be improper, and the case was ordered transferred. *Id.* at 795–96. *See Nabors Loffland Drilling Co. v. Martinez*, 894 S.W.2d 70, 73 (Tex.App.—San Antonio 1995, writ denied).

According to the edicts of *Ruiz* and *Wilson*, as well as *Sanchez* and *Nabors*, plaintiff failed to sustain her burden to show that Duval County was the proper county of ven-

ue. The defendants properly challenged venue in Duval County, and it was shown that Nueces County is the proper county of venue.

Because the venue ruling controls the disposition of this case, the majority opinion errs in deciding points of error on the sufficiency of the evidence. It is true that in some venue cases on appeal, the courts have addressed questions of limitations, consumer status, and incorrect jury instructions to guide the trial court and jury when the case is retried, but when venue must be transferred, as in the present case, it is improper to address on appeal questions which dispose of evidentiary issues.

Because the majority opinion orders the venue transfer and remands for a new trial, it improperly determined the evidentiary issues of legal and factual sufficiency of the evidence. The court's decision regarding venue is dispositive of the judgment to be entered in this case.

Therefore, I respectfully dissent to that portion of the majority opinion that disposes of the evidentiary issues. Accordingly, I would hold only that venue is proper in Nueces County and that the case be remanded to the trial court in Duval County with instructions to transfer the *entire* cause to Nueces County for a new trial.

## OPINION ON MOTION FOR REHEARING

GREEN, Justice.

On motion for rehearing, Castaneda challenges only our holding that GM and Stone did not waive their assertion of improper venue. We overrule the motion for rehearing.

The entirety of Castaneda's argument on rehearing rests on her claim that we are required to test the trial court's implied finding that GM and Stone waived their venue rights by traditional "no evidence" analysis. The case cited by Castaneda for this proposition, however, fails to support her claim; rather, the case refers to the standard of review of a trial court's venue determination. *See Ford Motor Co. v. Miles,* 967 S.W.2d 377, 380 (Tex.1998).

We believe the correct standard of review of a trial court's determination of waiver is abuse of discretion. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). Whether a waiver has occurred involves both factual determinations and legal conclusions. When a trial court decides a matter involving both factual and legal components, Texas courts generally employ the abuse of discretion standard. *See Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex. App.—San Antonio 1996, no writ). When applying the factual component of the standard, an abuse of discretion is shown only if, on the evidence before it, the trial court could reasonably have reached only one decision. *See Walker,* 827 S.W.2d at 839–840.

"Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Shepherd v. Ledford,* 962 S.W.2d 28, 36 (Tex.1998) (Hecht, J., concurring and dissenting) (quoting *Sun Exploration & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987)). "[W]aiver must be clearly established by facts or circumstances showing an intention by one party to waive and an understanding to that effect by the other." *Id.*

No reasonable view of the record in this case supports a finding of an intention on GM's or Stone's part to waive their right to proper venue. To the contrary, the record shows they consistently insisted on their right to try the case in a county of proper venue. The fact that the hearing on the motions to transfer venue was not conducted until a considerable time after their motions were filed does not necessarily imply that they were dilatory or acting inconsistently with their venue rights. *See Safety–Kleen Corp. v. Garcia,* 945 S.W.2d 268, 269 (Tex. App.—San Antonio 1997, no writ). To the extent the trial court may have denied GM's and Stone's motions to transfer venue on the basis of waiver, it was an abuse of discretion.

The motion for rehearing is overruled.