Donell **COLEMAN** and Sylvia Coleman, Individually, and as next Friend of her Minor Children, Donell Coleman, Jr., Monique Coleman, Denzell Coleman, and Dominique Coleman, Appellants,

v.

**CINTAS SALES CORPORATION d/b/a Cintas Corporation, Appellee.**

No. 04–00–00176–CV.

Court of Appeals of Texas, San Antonio.

Jan. 10, 2001.

Rehearing Overruled Feb. 7, 2001.

Steven B. Fisher, Daar, Fisher, Kanaris & Vanek, P.C., Chicago, IL, Timothy E. Gehl, King & Pennington, L.L.P., Houston, for Appellant.

Kelly J. Friedman, Randy L. Fairless, Johanson & Fairless, L.L.P., Sugarland, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

PAUL W. GREEN, Justice.

In this product liability case, appellants, Donell Coleman and family, sued appellee, Cintas Sales Corporation, after Coleman's uniform caught fire at work, resulting in severe burns. On appeal, Coleman challenges the trial court's grant of summary judgment in favor of Cintas. Coleman argues summary judgment was improper because (1) Cintas failed to prove the design of the uniform was not defective, (2) Cintas failed to prove the uniform was not the producing cause of Coleman's injuries, and (3) Cintas failed to prove there was no marketing defect. We affirm the trial court's judgment in part and reverse and remand in part.

## Background

Coleman worked for The Quarry at Lincoln Heights Golf Club (The Quarry) as a groundskeeper. The Quarry leased uniforms for its employees from Cintas. The contract between Cintas and The Quarry states:

> Unless specified otherwise, the garments supplied under this agreement are not flame retardant or acid resistant and contain no special flame retardant or acid resistant features. They are not designed for use in areas of flammability risk or where contact with hazardous materials is possible. Flame retardant and acid resistant garments are available from Company [Cintas] on request. Customer [The Quarry] warrants that none of the employees for whom garments are supplied pursuant to this agreement require flame retardant or acid resistant clothing.

In the course of his employment, Coleman used equipment with gas motors, such as lawnmowers and weed eaters, but he did not weld, burn trash, or use tools that required an open flame. He testified he was never asked to work around an open flame, excessive heat, or sparks. The fire occurred during an employee barbeque when the cookfire flared as Coleman was placing steaks on the grill. The sleeve of Coleman's 65% polyester—35% cotton shirt caught fire and he tried to smother the flame by rubbing the sleeve across his chest. This caught the body of his shirt on fire. According to Coleman, he then tried to smother the flames by rolling on the ground but the fabric continued to reignite. Finally, a supervisor smothered the fire with a large pile of uniforms. Coleman testified the fabric of his uniform melted, fusing to his skin.

## Standard and Scope of Review

We review a summary judgment de novo. To prevail on summary judgment, the movant must show there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Nixon v. Mr. Property Management, Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Under Tex.R.Civ.P. 166a, once the movant has established a right to summary judgment, the burden shifts to the non-movant to present issues which preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427, 430 (Tex.App.—San Antonio 1993, writ denied). We review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Weiss v. Mechanical Associated Servs., Inc.*, 989 S.W.2d 120, 124 (Tex.App.—San Antonio 1999, pet. denied). When a defendant moves for summary judgment, it must negate at least one

element of the plaintiff's cause of action or conclusively establish an affirmative defense. *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975).

### Discussion

The law of products liability does not guarantee a completely risk free product. However, liability is imposed on a manufacturer for products "in a defective condition unreasonably dangerous to the user or consumer." *Robins v. Kroger Co.,* 982 S.W.2d 156, 160 (Tex.App.—Houston [1st Dist.] 1998), *pet. denied per curiam,* 5 S.W.3d 221 (Tex.1999) (citing RESTATEMENT (SECOND) OF TORTS § 402A (1965)). A product may be unreasonably dangerous because of a defect in manufacturing, design, or marketing. *Id.* Coleman alleges the uniform was defective in design and marketing.

### A. Design defect

A product is defectively designed when the design itself causes the product to be unreasonably dangerous. *Id.* at 161. Determining whether the design is unreasonably dangerous requires balancing the utility of the product against the risk involved in its use. *Id.; see Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 433 (Tex. 1997). The risk-utility analysis involves consideration of several factors, including: (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer.

*Hernandez v. Tokai Corp.,* 2 S.W.3d 251, 256 (Tex.1999). Although this risk-utility analysis is generally a question of fact for the jury, the issue may be a legal question if reasonable minds cannot differ on the risk-utility analysis considerations.[1] *Id.* at 260–61.

A product's utility and risk must be measured with reference to the product's intended use. *Id.* at 258–59. Foreseeability of risk of harm is a requirement for a defectively designed product; a product need not be designed to reduce or avoid unforeseeable risks of harm. *Id.* at 257. Thus, the Texas Supreme Court has held a product that is safe for its intended use is not defectively designed merely because it is unsafe in other circumstances. *Id.* at 259 (citing *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 384 (Tex.1995)).

In this case, Cintas specifically marketed the uniforms in question for employees who would not be exposed to a risk of flammability in the workplace. Cintas provided its customer with an alternate choice of flame-retardant uniforms if the

---

1. The parties provided extensive briefing on the applicability of the FLAMMABLE FABRICS ACT, 15 U.S.C. § 1191 (1990). However, both parties agree compliance with the Act is not conclusive evidence a product is not defectively designed, although such compliance does constitute strong and substantial evidence of non-defective design. *See Sims v. Washex Machinery Corp.,* 932 S.W.2d 559, 565 (Tex.App.—Houston [1st Dist.] 1995, no writ). Since compliance with the Act is not dispositive, compliance cannot constitute grounds for summary judgment.

549

work involved exposure to a risk of flammability. The Quarry, having been offered the option of flame-retardant uniforms, was entitled to choose the material most comfortable and economically feasible for employees who would not be exposed to a risk of fire. *See id.* (consumer entitled to consider risks and benefits of different designs and choose among them). Cintas is not required to provide only flame-retardant uniforms when there is no foreseeable risk of exposure to fire associated with the product's clearly intended use. Because Cintas proved the uniform was not defectively designed, we overrule Coleman's first issue and affirm the trial court's judgment with regard to Coleman's design defect claim.

## B. Marketing Defect

Coleman claims Cintas failed to address the marketing defect claim in its motion for summary judgment. Cintas's original summary judgment motion addressed (1) whether the uniform was defective because its composition made it unreasonably dangerous, and (2) whether the alleged defect was a producing cause of Coleman's injuries. Coleman's response to the motion for summary judgment pointed out to the trial court that Cintas had not challenged Coleman's failure to warn claim. Thereafter, Cintas filed a reply to Coleman's response, presenting a single legal argument that Cintas had no duty to warn of an unforeseeable risk. Cintas's sole contention was that because it leased the uniforms for a specific purpose, any other use was unforeseeable.

In its brief on appeal, Cintas urges (1) the flammability of the uniform was not a producing cause of Coleman's injury, (2) Cintas had no duty to warn because the risk was unforeseeable, (3) Cintas was entitled to rely on The Quarry to advise its employees of any flammability risk associated with the uniform (the learned intermediary doctrine), and (4) Cintas had no duty to warn because the risk of flammability was open and obvious. Only the first two of these contentions were raised in the trial court.

### (1) Elements of the Duty to Warn

A product may be unreasonably dangerous if a manufacturer fails to warn of a foreseeable risk arising from the use of the product, and the "lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous." *Smith v. Aqua–Flo, Inc.,* 23 S.W.3d 473, 480 (Tex.App.—Houston [1st. Dist.] 2000, pet. denied); *accord Robins,* 982 S.W.2d at 160. The existence of a duty to warn of danger or instruct as to the proper usage of a product is a question of law. *Robins,* 982 S.W.2d at 160 (citing *Grinnell,* 951 S.W.2d at 426). The duty to warn is determined when the product leaves the manufacturer; however, there is no duty to warn when the risk associated with a product is within the "ordinary knowledge common to the community." *Id.* The duty to warn, if it exists, extends directly to the employee-user, not merely the employer-purchaser. *Rourke v. Garza,* 530 S.W.2d 794, 800–01 (Tex.1975); *Lopez v. Aro Corp.,* 584 S.W.2d 333, 335 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.).

### (2) Producing Cause

Cintas argues the flammability of Coleman's uniform was not a producing cause of his injuries. Instead, Cintas says the sole cause of the injury was Coleman's decision to light a cooking fire in a makeshift barbeque pit in windy conditions and his failure to exercise caution to stay away from the open flame. Coleman contends that even if his own negligence contributed to cause the fire, the material make-up of

the uniform caused his injuries to be more severe than they should have been.

■■■■■■ In a product liability case, the plaintiff need only show that the product defect was a producing cause of the damages or injuries. *General Motors Corp. v. Castaneda,* 980 S.W.2d 777, 781 (Tex. App.—San Antonio 1998, pet. denied). There may be more than one producing cause. *Id.* The Texas Supreme Court has held there is no valid distinction between a defect causing an accident and a defect causing an injury. *Turner v. General Motors Corp.,* 584 S.W.2d 844, 848 (Tex.1979) (defect in automobile did not cause accident but caused injury); *see Castaneda,* 980 S.W.2d at 780 (defect caused injuries, not accident); *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 745 (Tex.1980) (defect in boat propeller did not cause boat to hit stump but caused injury after accident); *see also Davidson v. Stanadyne, Inc.,* 718 F.2d 1334, 1340–41 & n. 11 (5th Cir.1983) (plaintiff accidentally hit faucet and turned it to full hot; alleged defect of failure to have temperature regulator caused injury not accident). In an accident where the injury involved is made worse by the product defect, the defect and the injury are interdependent and should be viewed as a combined event. *Turner,* 584 S.W.2d at 848.[2] Thus where the design defect enhances an injury, the defect is considered one of the producing causes of injury.

In a marketing defect case applying Texas law, the Fifth Circuit found alleged failure to warn was not merely a cause of enhanced damages, but could be viewed as actual causation of the accident. *See Koonce v. Quaker Safety Prods. & Mfg. Co.,* 798 F.2d 700, 717–18 (5th Cir.1986).

In *Koonce,* the plaintiff claimed he would have acted differently had there been an adequate warning. Absent evidence to the contrary, the court presumed the plaintiff would have heeded a proper warning and exercised adequate care, thus the accident itself, not merely the injury, would not have occurred. *Id.* at 718.

■■■■ As in *Koonce,* Coleman made two claims regarding producing cause. First, he claimed the composition of the fabric with its tendency to burn and melt made his injury worse than would normally be expected. This goes to the alleged design defect, not the failure to warn. However, Coleman also testified he was unaware of this heightened danger and he would have exercised additional caution had he been properly warned. Therefore, with regard to the marketing defect claim, Coleman raised a fact issue of actual causation rather than enhanced injury.

*(3) Foreseeability*

The parties disagree on whether Coleman's use of the uniform while barbequeing was foreseeable. Cintas says this activity was not foreseeable because the uniforms were specifically provided for jobs that did not entail risk of fire. Coleman says it is foreseeable an employee might be wearing his uniform while performing non-work-related tasks.

■■■■■■ "If a manufacturer knows or should know of potential harm to a user because of the nature of its product, the manufacturer is required to give an adequate warning of such dangers." *Bristol–Myers Co. v. Gonzales,* 561 S.W.2d 801, 804 (Tex.1978). A manufacturer may be held liable for foreseeable misuse of its

---

2. Because these cases where the defect does not cause the accident but does contribute to the injury so often involve automobile accidents, they are referred to as "crashworthi-ness" cases. *See Koonce v. Quaker Safety Prods. & Mfg. Co.,* 798 F.2d 700, 717–18 (5th Cir.1986).

product. Where the product is not defective if used as intended, a foreseeable misuse may still give rise to a duty to warn. *USX Corp. v. Salinas,* 818 S.W.2d 473, 484 (Tex.App.—San Antonio 1991, writ denied); *Blackwell Burner Co., Inc. v. Cerda,* 644 S.W.2d 512, 516 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.).

It is undisputed in this case the fabric would burn and melt if exposed to open flame. It is reasonably foreseeable that employees may perform non-work-related tasks in their work uniforms, whether at work or at home. Those tasks could involve an open fire, a foreseeable misuse of the uniform. At the very least, Coleman raised an issue of fact on this question. Therefore, he established a risk that may have been foreseeable to Cintas and a concurrent duty to warn.

*(4) Waiver*

 A manufacturer does not have a duty to warn if the danger is "so well known to the community as to be beyond dispute." *Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 388 (Tex. 1991). Additionally, a manufacturer may fulfill its duty to warn by proving that an adequate warning was given to an intermediary who would then pass the warning along to the user. *Aluminum Co. of Am. v. Alm,* 785 S.W.2d 137, 138–39 (Tex.1990); *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 592 (Tex.1986). Both "commom knowledge" and "learned intermediary" are defenses that must be pled and proved by the manufacturer in the trial court. *See Grinnell,* 951 S.W.2d at 428 (defendant must establish danger was common knowledge when consumer began using product); *Aluminum Co. of Am.,* 785 S.W.2d at 138–39 (manufacturer can satisfy duty by proving adequate warning through intermediary).

 Cintas may be entitled to summary judgment if it proves an affirmative defense of "common knowledge" or "learned intermediary." However, neither of those defenses was presented to the trial court in the motion for summary judgment or the reply filed by Cintas. Rule 166a(c) requires the grounds for a motion for summary judgment to be set forth specifically in the motion, not merely in a brief. Tex.R.Civ.P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). We may not affirm summary judgment on a ground not presented in the motion. *Travis v. City of Mesquite,* 830 S.W.2d 94, 99–100 (Tex. 1992); *Roberts v. Southwest Tex. Methodist Hosp.,* 811 S.W.2d 141, 145–46 (Tex. App.—San Antonio 1991, writ denied) (summary judgment could not be granted on grounds raised in brief and in response to plaintiff's motion for summary judgment, but not in defendant's summary judgment motion).

Because Coleman raised an issue of fact on the duty to warn and Cintas failed to present its affirmative defenses, the trial court erred when it granted summary judgment for Cintas on the marketing defect claim.

### Conclusion

Cintas conclusively proved there was no defect in the uniform, given the specific use for which it was provided. However, Coleman raised a preliminary fact question on the duty to warn which potentially supports his claim for a marketing defect. Cintas failed to negate the element of producing cause on the marketing defect claim and waived the defenses of common knowledge and learned intermediary by failing to raise them in the motion for summary judgment in the trial court. Accordingly, the trial court's judgment is affirmed as to Coleman's claim for design

defect and reversed and remanded to the trial court for further proceedings on Coleman's marketing defect claim.