**In re KAJIMA INTERNATIONAL, INC., Relator.**

No. 13–03–00594–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

June 24, 2004.

See also 15 S.W.3d 289.

Steven John Lownds, Marcie L. Schout, Quilling, Selander, Cummiskey & Lownds, Dallas, Andrew M. Trusevich, Fort Worth, Emmett Cole, Jr., Cole, Cole & Easley, Victoria, Christa L. Brown, Austin, John W. Griffin, Jr., Houston, Marek & Griffin, Victoria, for relator.

Robert J. Seerden, Barger, Hermansen, McKibben & Villarreal, Todd A. Hunter, Hunter & Handel, Corpus Christi, David R. Montpas, San Antonio, Juan J. "Chuy" Hinojosa, Hinojosa & Powell, McAllen, for real parties in interest.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

In this original proceeding, we are called on to address application to a multi-million dollar judgment of changes in the post-judgment interest rate in Texas enacted by the 78th Legislature in 2003. The relator and judgment creditor is Kajima International, Inc. ("Kajima"), an international construction firm. The real party in inter-

est and judgment debtor is Formosa Plastics Corporation, USA ("Formosa"), a petrochemical giant with Texas operations in Point Comfort, Calhoun County, Texas.

## I. PRELIMINARY BACKGROUND

The judgment against Formosa, filed April 12, 2002, awarded Kajima $15,432,123.45 in actual fraud damages and $14,210,269.65 in prejudgment interest,[1] for a total judgment of $29,642,393.10. It also provided for postjudgment interest:

Plaintiff shall recover post-judgment interest at the rate of ten percent per annum, on all sums herein awarded from the date of this judgment until paid. Said interest shall be compounded annually.

Formosa filed a notice of appeal to this Court on July 7, 2002 in Cause No. 13–02–385–CV.[2] While the appeal was pending, on March 7, 2003, the trial court granted Formosa's request to supersede the judgment with a deposit of $37,900,000.00 in United States Treasury notes. The trial court's Order on Motion Approving Substitution of Deposit in Lieu of Supersedeas Bond provided that the deposit was to "cover the value of the judgment and accrued interest as of September 30, 2004."

On August 11, 2003, Formosa filed a motion with the trial court seeking to reduce the amount of security required to stay enforcement of the judgment. *See* Tex.R.App. P. 24.3(a).[3] Formosa argued that House Bill 2415 ("HB 2415"), which the Texas Legislature passed, effective June 20, 2003, as an amendment to section 304.003(c) of the Texas Finance Code, had the effect of reducing the rate of postjudgment interest accruing on the judgment from ten percent to five percent per annum.[4] The trial court held a hearing on Formosa's motion on September 12, 2003.

1. Kajima filed the lawsuit on January 25, 1993. After two mistrials, the case went to judgment and was the subject of a prior appeal. *Kajima Int'l, Inc. v. Formosa Plastics Corp. USA*, 15 S.W.3d 289 (Tex.App.-Corpus Christi 2000, pet. denied). This Court reversed and remanded the case. Cause No. 13–02–385–CV is the appeal following remand.

2. Cause No. 13–02–385–CV is styled *Formosa Plastics Corp. USA v. Kajima Int'l, Inc.*

3. To conform with amendments to the civil practice and remedies code included within HB 4, the Texas Supreme Court amended certain provisions of rule 24 while this appeal was pending. The amendments are "effective in all cases in which a final judgment is signed on or after September 1, 2003." *Misc. Docket Order No. 03–9145* (Tex.2003); *see also* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 7.01, 7.02, 7.03, 7.04, 2003 Tex. Gen. Laws 863. Accordingly, amended rule 24 does not apply to this original proceeding. Thus, citation in this opinion is to the version of rule 24 in effect on the date of judgment.

4. The enabling clause of the legislation provided that: "The changes in the law made by this Act apply in a case in which a final judgment is signed or subject to appeal on or after the effective date of this Act." *See* Act of June 2, 2003, 78th Leg., R.S., ch. 676, § 1, 2003 Tex. Gen. Laws 2096, 2097 (eff. June 30, 2003) ("HB 2415"); *see also* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 6.04, 2003 Tex. Gen. Laws 862, 899 (eff. September 1, 2003) ("HB 4"). The substantive content of HB 2415 and section 6.04 of HB 4 is identical. The underlying appeal in which this original proceeding arose was pending before the effective dates of both amendments. Accordingly, we do not address in this opinion which effective date controls. *See* Jennifer Tillison, *Subject to Appeal*, The Appellate Advocate, Vol. XVI, No. 4, pp. 6–7 (Winter 2004) (concluding that HB 2415, as later-enacted provision, provides effective date); *see also* Tex. Gov't Code Ann. § 311.025(b), (d), (e) (Vernon 1998) (providing methods for determining which irreconcilable statutes and amendments control when enacted by same session of Legislature). Because we prefer to simplify where possible, we refer to the legislation throughout this opinion as "HB 2415" except when discussing the specific legislative history of each bill.

Meanwhile, the underlying appeal in Cause No. 13–02–385–CV was argued and submitted on September 24, 2003. On October 1, 2003, the trial court granted Formosa's motion and reduced the amount required to suspend execution of the judgment to $32,000,000.00 "through October 12, 2003." The trial court also issued findings of fact and conclusions of law. Kajima then filed with this Court in the pending appeal its "Motion to Review Sufficiency of Security and Motion to Stay Order Modifying Security" on October 3, 2003 (the "Rule 24.4 Motion"). That same day, we ordered the parties to file supplemental briefs regarding application to the underlying appeal of the amendment to the finance code. We construed the Rule 24.4 Motion as an original proceeding and, on October 10, 2003, stayed the trial court's order modifying the security.

In its response to Kajima's Rule 24.4 Motion, Formosa argues that Kajima waived its complaint by not objecting to the trial court's order or to its findings of fact and conclusions of law. Accordingly, we first address the preservation-of-error issue.

## II. PRESERVATION OF ERROR

Formosa correctly cites the general rule that we will not review claims of error unless the party first brought its complaint to the attention of the trial court and secured a ruling. *See* TEX.R.APP. P. 33.1(a)(1); *see also Winters v. Arm Ref. Co.*, 830 S.W.2d 737, 738 (Tex.App.-Corpus Christi 1992, writ denied). Therefore, Formosa argues, Kajima waived any challenge to the trial court's legal conclusion that HB 2415 applies to the judgment now on appeal by not objecting to the order or its underlying findings and conclusions. Kajima responds that "[l]egal conclusions of the trial court are always reviewable." *See Pegasus Energy Group, Inc. v. Chey-*

*enne Petroleum Co.*, 3 S.W.3d 112, 121 (Tex.App.-Corpus Christi 1999, pet. denied).

■ This Court held in *Winters* that following a non-jury trial, "a motion for judgment or objections to the judgment directing the trial court's attention to the error was necessary in order to complain that the trial court erred by entering that judgment." *Winters*, 830 S.W.2d at 738. In *Winters*, the record was "devoid of any requests, objections, or motions calling the court's attention to errors in its judgment." *Id.* Here, however, Kajima opposed Formosa's motion that the trial court apply HB 2415 to the judgment, vigorously objected to reduction of the security, and argued that the amendment does not apply to judgments pending on appeal.

*Winters* stands for the proposition that Kajima was required to voice to the trial court its objection to application of HB 2415. Kajima did so. The trial court implicitly overruled Kajima's objection when it granted Formosa's motion and ordered the security reduced. *See* TEX.R.APP. P. 33.1(a)(2)(A). Kajima was not required to renew its complaint after entry of the trial court's order reducing the security. *See* TEX.R.APP. P. 33.1(c).

Accordingly, we hold that Kajima preserved its challenge to the trial court's application of HB 2415 to reduce the amount required to secure the judgment. We turn to the rules of appellate procedure governing suspension of enforcement of civil judgments pending appeal.

## III. SUSPENSION OF ENFORCEMENT OF JUDGMENTS

### A. Amount of Bond, Deposit, or Security

Our procedural rules allow a judgment debtor to supersede a judgment and sus-

pend its enforcement by posting security set by the trial court. Tex.R.App. P. 24.1, 24.2; *In re Crow–Billingsley Air Park*, 98 S.W.3d 178, 179 (Tex.2003) (orig. proceeding) (per curiam). Rule 24 authorizes a trial court to "make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause." Tex.R.App. P. 24.1(e); *Miller v. Kennedy & Minshew, P.C.*, 80 S.W.3d 161, 166 (Tex.App.-Fort Worth 2002, no pet.). Accordingly, to stay enforcement of a judgment for the recovery of money, the appellant must post security in "at least the amount of the judgment, interest for the estimated duration of the appeal, and costs." Tex.R.App. P. 24.2(a)(1); *see Lowe v. Monsanto Co.*, 965 S.W.2d 741, 742 (Tex.App.-El Paso 1998, pet. denied) (per curiam).

█ Nonetheless, the Texas Supreme Court has recognized, in certain instances, that the general rule requiring bond or other security in the total amount of a money judgment may effectively deny an appellant the right to appeal. *Isern v. Ninth Court of Appeals*, 925 S.W.2d 604, 606 (Tex.1996) (orig. proceeding) (per curiam); *McDill Columbus Corp. v. Univ. Woods Apts.*, 7 S.W.3d 923, 925 (Tex.App.-Texarkana 2000, no pet.). To guard against that possibility and yet protect the judgment creditor's right to collect its judgment, the supreme court amended the appellate rules to provide for reduced or alternate security. *Isern*, 925 S.W.2d at 605; *McDill Columbus Corp.*, 7 S.W.3d at 925. If the trial court finds that: (1) posting "the amount required by [rule 24.2(a)] is likely to cause the judgment debtor substantial economic harm"; and (2) posting "a lesser amount will not substantially impair the judgment creditor's ability to recover under the judgment," the trial court "may order a lesser amount than required by [rule 24.2(a)]." Tex.

R.App. P. 24.2(b). The party seeking alternate security bears the burden of proving the "substantial economic harm to debtor" and "no substantial impairment to creditor" requirements imposed by rule 24.2(b). *McDill Columbus Corp.*, 7 S.W.3d at 925.

### B. Continuing Trial Court Jurisdiction

Rule 24.3 provides that "[t]he trial court has continuing jurisdiction to do the following: (1) order the amount and type of security and decide the sufficiency of sureties; and (2) if circumstances change, modify the amount or type of security required to continue the suspension of a judgment's execution." Tex.R.App. P. 24.3. The continuing jurisdiction conferred by rule 24.3 extends "[e]ven after the trial court's plenary power expires." *Id.*

### C. Scope and Standard of Appellate Review

#### 1. Scope of Review

On appeal of a trial court's order setting the amount and form of security, rule 24.4 authorizes us to review: "(1) the sufficiency or excessiveness of the amount of security; (2) the sureties on any bond; (3) the type of security; (4) the determination whether to permit suspension of enforcement; and (5) the trial court's exercise of discretion under [rule 24.3(a)]." Tex. R.App. P. 24.4(a); *McDill Columbus Corp.*, 7 S.W.3d at 925. Our "[r]eview may be based both on conditions as they existed at the time the trial court signed an order and on changes in those conditions afterward." Tex.R.App. P. 24.4(b).

#### 2. Standard of Review

We review a trial court's challenged conclusions of law as legal questions. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Jackson v. Kincaid*, 122 S.W.3d 440, 445

(Tex.App.-Corpus Christi 2003, pet. filed). Thus, we review de novo a trial court's application of the law to the facts. In other words, we determine the correctness of the trial court's legal conclusions. *BMC Software*, 83 S.W.3d at 794. We are not obligated to give any particular deference to those conclusions. *Pegasus Energy Group*, 3 S.W.3d at 121. As the final arbiter of the law, we have the power and the duty to independently evaluate legal determinations of the trial court. *Id.* If we determine that a conclusion of law is not correct, but the trial court rendered the proper judgment, the incorrect conclusion of law does not require reversal. *Id.* Thus, in reviewing challenges to the trial court's conclusions of law, we sustain the judgment on any legal theory supported by the evidence. *In re A.M.*, 101 S.W.3d 480, 484–85 (Tex.App.-Corpus Christi 2002, orig. proceeding). We do not reverse an incorrect conclusion of law if the findings of fact support a correct legal theory. *Id.* at 485.

■ We apply an abuse-of-discretion standard in conducting the review authorized by rule 24.4(b). *Miller*, 80 S.W.3d at 165. A trial court abuses its discretion in determining the legal principles that control its ruling if the court clearly fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

### IV. THE QUESTION AT ISSUE

Kajima does not assert that Formosa did not meet its burden to prove that continuation of the original security would subject Formosa to "substantial economic harm" and that Kajima would suffer "no substantial impairment" in its ability to

collect its judgment.[5] *See* Tex.R.App. P. 24.2(b); *see also McDill Columbus Corp.*, 7 S.W.3d at 924–25. Rather, Kajima argues: (1) the trial court is without jurisdiction to modify the judgment; (2) the modified amount of security is therefore less than the value of the judgment; and (3) even if the trial court had the power to modify the judgment, application of HB 2415 gives the amendment an improper retroactive effect. Kajima otherwise does not challenge the trial court's authority to act under rule 24.

In its response, Formosa agrees that the trial court lacked plenary power to modify the terms of the judgment by the time HB 2415 became law. It concedes that this Court, not the trial court, has jurisdiction over the judgment at this time. It acknowledges that its purpose in moving to reduce the amount of security was to allow the trial court the opportunity to consider application of HB 2415. Accordingly, we address only the question of the statute's applicability to the trial court's determination of the amount required to secure the judgment. *See* Tex.R.App. P. 47.1.

### V. STATUTORY INTERPRETATION OF HB 2415

#### A. The Rules of Statutory Construction

Our purpose in construing a statute is to determine the Legislature's intent. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex.2002). As a starting point, we construe statutes as written and, if possible, ascertain intent from the statutory language. *Id.* We also may consider other factors, including the object the statute seeks to obtain, legislative history, and

---

5. We note that Formosa's web site indicates that a $1 billion expansion project begun in 1998 at its Texas facility in Calhoun County employs 1600 full-time and 400 contract workers. A $1.5 billion Formosa project completed in 1994 represented the largest single private investment ever in the State of Texas.

the consequences of a particular construction. *Id.; see* Tex. Gov't Code Ann. § 311.023 (Vernon 1998). Moreover, we always must consider a statute as a whole and attempt to harmonize its various provisions. *Id.* If possible, we also must construe statutes to avoid constitutional infirmities. *Id.; see* Tex. Gov't Code Ann. § 311.021(1) (Vernon 1998).

The Code Construction Act creates presumptions that inform our analysis of the Legislature's intent in enacting a statute. First, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." Tex. Gov't Code Ann. § 311.022 (Vernon 1998). Further, we presume that the Legislature intended: (1) compliance with the State and federal constitutions; (2) the entire statute to be effective; (3) a just and reasonable result; (4) a result feasible of execution; and (5) the favoring of public interest over any private interest. Tex. Gov't Code Ann. § 311.021 (Vernon 1998); *Tex. Mun. League v. Tex. Workers' Comp. Comm'n,* 74 S.W.3d 377, 381 (Tex.2002). We begin with an analysis of the words the Legislature used in HB 2415.

### B. The Plain Language of the Statute

As codified, HB 2415 reads in its entirety:

§ 304.003. Judgment Interest Rate: Interest Rate or Time Price Differential Not in Contract

(a) A money judgment of a court of this state to which Section 304.002 does not apply, including court costs awarded in the judgment and prejudgment interest, if any, earns postjudgment interest at the rate determined under this section.

(b) On the 15th day of each month, the consumer credit commissioner shall determine the postjudgment interest rate to be applied to a money judgment rendered during the succeeding calendar month.

(c) The postjudgment interest rate is:

(1) the prime rate as published by the Federal Reserve Bank of New York on the date of computation;

(2) five percent a year if the prime rate as published by the Federal Reserve Bank of New York described by Subdivision (1) is less than five percent; or

(3) 15 percent a year if the prime rate as published by the Federal Reserve Bank of New York described by Subdivision (1) is more than 15 percent.

Tex. Fin.Code Ann. § 304.003 (Vernon Supp.2004). The enabling clause of the statute provides that "[t]he changes in the law made by this Act apply in a case in which a final judgment is signed or subject to appeal on or after the effective date of this Act." [6] The question of the applicability of HB 2415 to this case turns on the Legislature's intent in enacting the phrase "in which a final judgment is signed or subject to appeal." In other words, does the enabling clause "expressly" make the statute "retrospective" so as to rebut the presumption that it is "prospective in its operation"? *See* Tex. Gov't Code Ann. § 311.022 (Vernon 1998).

We note that the first appellate court to confront this issue held that "[t]he plain meaning of the phrase 'subject to an appeal' when used to describe a judgment traditionally means that the judgment fully and finally disposes of all parties and all issues before the trial court and therefore is capable of being appealed." *Columbia Med. Ctr. of Las Colinas v. Bush,* 122 S.W.3d 835, 865 (Tex.App.-Fort Worth

---

**6.** *See* note 4.

2003, pet. denied); *accord Tesfa v. Stewart*, 135 S.W.3d 272, 279 (Tex.App.-Fort Worth 2004, no pet. h.) ("Here, the final April 25, 2003 judgment was 'signed' and was 'subject to appeal' on the date it was signed, before the June 20, 2003 and September 1, 2003 effective dates of the amendments to the finance code."); *Warrantech Corp. v. Computer Adapters Servs.*, 134 S.W.3d 516, 532 (Tex.App.-Fort Worth 2004, rule 53.7(F) mot. for extension of time filed) ("The judgment at issue here was signed and became capable of being appealed months before the effective date of the amendment; therefore, the 5% postjudgment interest rate in amended section 304.003 does not apply.").[7]

We also note that one commentator has opined that the amendment "does not apply to appeals that were already pending when the legislation went into effect." *See* Jennifer Tillison, *Subject to Appeal*, THE APPELLATE ADVOCATE, Vol. XVI, No. 4, p. 1 (Winter 2004). Tillison concluded:

> *In the absence of any specific legislative history*, it must be presumed that the Legislature did not intend to add a new, unpreserved issue to every case involving a money judgment pending before every Texas court of appeals, the Texas Supreme Court, and federal courts applying Texas law.

*Id.* at p. 10 (emphasis added). To date, none of the cases that have analyzed the issue has discussed the complete legislative histories of the amendments. On our order, the parties here have provided detailed legislative histories of both amendments. Those legislative histories, Formosa argues, conclusively prove the Legislature's intent that the amendments apply to all pending appeals. In analyzing Formosa's contention, we find it illuminating to place the time line of Formosa's appeal within the context of the legislative histories of HB 4 and HB 2415.

### C. The Appellate and Legislative Chronologies

As noted above, the final judgment in this case is dated April 12, 2002. Formosa filed its notice of appeal on July 9, 2002. On February 17, 2003, during the regular session of the 78th Legislature, legislation amending the finance code was introduced in the Texas House of Representatives. The HB 4 version of the amendment provided: "This article applies only to a suit in which a judgment is signed on or after the effective date of this Act, without regard to whether the suit commenced before, on, or after that date." HB 2415 was introduced on March 12, 2003. At that time, the HB 2415 version of the legisla-

---

7. The Beaumont Court of Appeals also has refused to apply the amendments to a pending appeal. *Sibley v. RMA Partners, L.P.*, No. 09–00–523 CV, 138 S.W.3d 455, 460, 2004 WL 1047136, at *5 (Tex.App.-Beaumont May 6, 2004, no pet. h.) (per curiam) ("The final judgment here was signed August 15, 2000. Appellant filed his notice of appeal on November 9, 2000, at which time this cause became 'pending' on appeal, rather than 'subject to' appeal, long before the amendments' effective dates."). The Houston Fourteenth and the Austin Courts of Appeals agree. *Bennett v. Cochran*, No. 14–00–01160–CV, 2004 WL 852298, at *7 (Tex.App.-Houston [14th Dist.] Apr. 22, 2004, no pet. h.) ("We agree with our two sister courts of appeals that have concluded the 'subject to appeal' language does not mean 'pending on appeal.' "); *Utts v. Short*, No. 03–03–00512–CV, 2004 WL 635342, at *6 (Tex.App.-Austin Apr. 1, 2004, rule 53.7(F) mot. for extension of time filed) (memorandum opinion). The Dallas Court of Appeals has reached the same conclusion. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 132 S.W.3d 671, 688 (Tex.App.-Dallas 2004, no pet. h.) ("Because the judgment in this case was both signed and subject to appeal before September 1, 2003, the amended statute setting post-judgment interest rates does not apply.").

tion did not address the applicability of the amendment.

Meanwhile, Formosa filed its appellant's brief on April 16, 2003. Among its issues on appeal, Formosa sought an adjustment of the prejudgment interest awarded in the judgment to reflect settlement credits. Formosa's brief did not challenge the rate of prejudgment or postjudgment interest.

On April 25, 2003, HB 2415 passed the House, still without addressing the applicability of the amendment. The Texas Senate received HB 2415 from the House on April 28, 2003. On May 1, 2003, it was read for the first time in the Senate and referred to the Senate Jurisprudence Committee.

On May 5, 2003, witness Michael Graham, a lawyer, testified before the Senate State Affairs Committee regarding the postjudgment interest provisions contained in HB 4:

We believe the committee substitute which provides for a prime rate interest without caps is appropriate. It is designed to create a problem or fix a problem created by the prior statute which provided for a floating interest rate that was capped between 10 and 20 percent—the floating—that interest rate, if it were not capped under the mechanism provided under the existing statute would be 1–1/2 percent. So we think a prime rate is appropriate without caps because it eliminates the future problem of what happens when the caps get out of whack. The second thing we would like to talk about is the elimination of prejudgment interest on future damages which was a quirk in the prior statute, which no one has ever been effectively able to explain to a client of why he should pay prejudgment interest on things that haven't happened yet in the future. The final point is the effective date of the statute. The purpose of

these amendments are [sic] to create or to fix an existing inequity we believe that it should be fixed as quickly as possible and, therefore, should apply to all suits within the judicial process currently and not to causes of action accruing in the future.

On May 12, 2003, a Senator explained HB 2415 to the Senate Jurisprudence Committee:

Chairman: Chair lays out House Bill 2415 and recognizes [the Senator] to explain the bill.

Senator: Thank you, Mr. Chairman. Members, this is a companion to Senate Bill 1156, which this Committee voted out in April. As you remember, this bill proposes to change how Texas calculates the postjudgment interest rates. Current law provides that the calculation as used in the 52 week treasury bill rate. Well, unfortunately there are no more 52 week treasury bills so there is no rate with which to set out postjudgment rates to.

Chairman: Some people kind of like that.

Senator: Some people think that is an excellent deal, but we probably ought to have something. The senate bill last time proposed the weekly average one year constant maturity treasury yield, but that was inconsistent with what was in House Bill 4, so this bill is, or the language in this bill is, consistent with what House Bill 4 proposes, and that is the prime rate as published by the Federal Reserve Bank of New York on the date of computation.

A Bill Analysis of HB 2415 dated May 13, 2003, states that the bill "[m]akes application of this Act prospective." On May 14, 2003, the Senate Committee Version of HB 2415 was filed. The language "[t]his

Act applies only to a suit in which a judgment is signed or subject to appeal on or after the effective date of this Act" appeared for the first time in the committee substitute. By Senate Floor Amendment No. 8 on May 16, 2003, the Senate amended the postjudgment interest provisions contained in HB 4 to include the same language. In discussing the amendment on the Senate floor, a Senator explained:

> Members, this section or this amendment amends Section 6.04 on page 15, line 20. This is the area of postjudgment interest. The whole idea behind these are to encourage lawsuits to be settled and the way it currently operates, if you don't include into the mix these—the cases that are on appeal—then you have an unequal or a disincentive not to settle. So, the current postjudgment interest rate is ten percent. Now this bill sets it up and ratches [sic] it to the prime rate and most all agree that the reason we were doing that was because the current ten percent is an excessive amount and provides an actual windfall on these judgments so this rate also continues throughout the appeals process and can discourage settlements between the parties of the lawsuit. So this amendment attempts to alleviate that problem and brings equity to all cases.

Another Senator concurred with the need for the floor amendment, stating that when the amendment was brought to the committee "we weren't exactly sure at that time whether or not it was, in fact, needed, but I'm convinced, I am persuaded now that it is a good amendment and it is acceptable."

Meanwhile, on May 29, 2003, Kajima filed its appellee's brief in Cause No. 13–02–385–CV. On May 31, 2003, the Conference Committee on HB 4 reported in its section-by-section analysis that the postjudgment interest provisions contained in HB 4 provided that "[t]he changes in law made by this article apply in any case in which a final judgment is signed or is subject to appeal on or after the effective date of this Act." On June 1, 2003, the House adopted the Conference Committee Report. That same date, the Senate followed suit.

Similarly, also on May 31, 2003, the Conference Committee on HB 2415 reported that HB 2415 provided that "[t]he changes in law made by this article apply in any case in which a final judgment is signed or is subject to appeal on or after the effective date of this Act." On June 1, 2003, the House adopted the Conference Committee Report, as did the Senate. The Governor of Texas signed HB 4 on June 11, 2003, with an effective date of September 1, 2003. *See* Tillison, *Subject to Appeal,* at p. 6.

Meanwhile, on June 18, 2003, Formosa timely filed its reply brief. In its appellant's brief, Formosa had argued that it was entitled to a recalculation of prejudgment interest to reflect credits for written settlement offers it made to Kajima. In its reply brief, Formosa again asserted that the case should be remanded for recalculation of the prejudgment interest. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 532 (Tex.1998) (holding that "prejudgment interest accrues at the rate for postjudgment interest. . . ."). For the first time, however, Formosa also argued that HB 4's amendment to the finance code applied to the appeal. Even excluding settlement credits, Formosa contended, the total amount of prejudgment interest should be reduced from $14,210,269.65 to $7,105,134.83. Formosa did not note the effective date of the statute, which was not until September 1, 2003.

Two days after Formosa filed its reply brief, on June 20, 2003, the Governor signed HB 2415, giving it an effective date of June 20, 2003. *See* Tillison, *Subject to Appeal,* at p. 6. On August 11, 2003, Formosa filed its motion to modify the amount required to secure Kajima's judgment against it, citing HB 2415 and its effective date of June 20, 2003.

### D. The Implications of the Legislative Histories

 Formosa argues that the intent of the Legislature could not be more obvious from the Senator's explanation of the Senate floor amendment: "the whole idea behind these [is] to encourage lawsuits to be settled" on appeal.[8] We are not persuaded, however, that the legislative histories of the two amendments, including the Senator's statement, carry such weight as to compel any conclusion different from that uniformly reached by our sister courts: the term "subject to appeal" as used in HB 4 and HB 2415 means that the judgment "fully and finally disposes of all parties and all issues before the trial court and therefore is capable of being appealed."[9] *See, e.g., Bush,* 122 S.W.3d at 865. We note that the supreme court has denied the petition for review in *Bush.* Accordingly, we find that this judgment was neither "signed" nor "subject to appeal" on or after the effective dates HB 4 or HB 2415. Rather, the final April 12, 2003 judgment was "signed" and was "subject to appeal" on the date it was signed, before the June 20, 2003 and September 1, 2003 effective dates of the amendments. *See Tesfa,* 135 S.W.3d at 279. We, too, decline to apply the 2003 legislative changes in postjudgment interest rates to cases with final judgments pending on appeal on the amendments' effective dates. *See id.; cf. Hoeffner, Bilek & Eidman, L.L.P. v. Guerra,* No. 13–01–503–CV, 2004 WL 1171044, at *11 (Tex.App.-Corpus Christi May 27, 2004, no pet. h.) (memorandum opinion) (modifying judgment to reflect award of ten percent postjudgment interest).

### VI. CONCLUSION

We find that the trial court failed to analyze or apply the law correctly and, as a result, reached an incorrect legal conclusion when it applied HB 2415 to this appeal. *See Walker,* 827 S.W.2d at 840; *see also BMC Software,* 83 S.W.3d at 794. Accordingly, we hold that the trial court abused its discretion in reducing the amount required to secure Kajima's judgment against Formosa. *See Walker,* 827 S.W.2d at 840; *see also BMC Software,* 83 S.W.3d at 794. We reverse the order of the trial court dated October 1, 2003 modifying the security. The trial court's March 7, 2003 Order on Motion Approving Substitution of Deposit in Lieu of Supersedeas Bond remains in effect. The stay we ordered on October 10, 2003 is hereby VACATED.

---

8. We note that one case raising the issue of HB 2415's application to a pending appeal settled after the Dallas Court of Appeals refused to apply the 2003 amendments. *CIGNA Healthcare of Tex., Inc. v. Pybas,* 127 S.W.3d 400, 421 (Tex.App.-Dallas 2004), withdrawn, dism'd, 2004 WL 585008 (Tex.App.-Dallas Mar. 25, 2004, no pet.) (memorandum opinion).

9. As the United States Supreme Court noted in determining the effective date of legislation it was interpreting, " '[A] court would be well advised to take with a large grain of salt floor debate and statements placed in the Congressional Record which purport to create an interpretation for the legislation that is before us.' " *Landgraf v. USI Film Prods.,* 511 U.S. 244, 263 n. 15, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (quoting Senator Danforth, 137 Cong. Rec. S15325 (Oct. 29, 1991)).