NUMBER 13-03-560-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

BIC PEN CORPORATION,                                                              Appellant,

 

                                                             v.                                

 

JANICE M. CARTER, INDIVIDUALLY

AND AS NEXT FRIEND OF BRITTANY

CARTER, JONAS CARTER AND

TARASHA GIPSON,                                                                        Appellee.

 

On appeal from the 130th District
Court of Matagorda County, Texas.

 

 

                                          O
P I N I O N

 

                         Before
Justices Hinojosa, Yañez, and Garza

                                         Opinion
by Justice Garza

 








This is a products liability case.  Six-year-old Brittany Carter sustained
third-degree burns to over 55 percent of her body when her five-year-old
brother Jonas accidently set fire to her dress using a model J-26 lighter made
by Bic Pen Corporation.  Brittany=s mother, Janace Carter, sued Bic as next friend of
Brittany, claiming Brittany=s injuries were caused by manufacturing and design
defects in the lighter.  The jury found
for the plaintiff.  It found three
million dollars in actual damages, and after finding that Bic acted with
malice, it found an additional two million dollars in exemplary damages.[1]  

Bic now appeals the following issues:  (1) the plaintiff did not present legally or
factually sufficient evidence of causation; (2) the plaintiff=s claims are preempted by federal consumer product
safety law; (3) the plaintiff did not present legally or factually sufficient
evidence of a design defect; (4) the plaintiff did not present legally or
factually sufficient evidence of a manufacturing defect; (5) the trial court
erred in giving its spoliation instruction and failing to instruct the jury
that the presumption could be rebutted; (6) the trial court erred in admitting
testimony of unqualified expert witnesses, who opined on irrelevant and
prejudicial matters; (7) the plaintiff did not present legally or factually
sufficient evidence to prove malice; and (8) the trial court awarded excessive
interest.[2]








We hold that (1) the plaintiff=s design-defect claim is not preempted by federal
law, (2) the evidence is legally and factually sufficient to prove that a
design defect in Bic=s model J-26 lighter caused Brittany Carter=s injuries and that Bic acted with malice, (3) the
trial court did not commit reversible error by admitting testimony by the
plaintiff=s expert witnesses, and (4) the trial court did not
award excessive interest.  Accordingly,
we affirm the judgment of the trial court based on the plaintiff=s design-defect claim and do not address any of Bic=s issues as they relate to the plaintiff=s manufacturing-defect claim.  See Tex.
R. App. P. 47.1.[3]     

I.  Federal
Preemption 

At the outset, we must determine whether the
plaintiff=s design-defect claim is preempted, as Bic argues,
by conflicting federal standards. 
Preemption is a legal issue, which this Court reviews de novo.  See City of Euless v. Dallas/Fort Worth
Int=l Airport Bd., 936 S.W.2d 699, 702 (Tex. App.CDallas 1996, writ denied) (citing In re Humphreys,
880 S.W.2d 402, 404 (Tex. 1994)).








Pursuant to the Consumer Product Safety Act (Athe Act@), the Consumer Product Safety Commission has issued
standards regulating the child resistance of disposable lighters.  See 15 U.S.C. '' 2051B85 (2002).  
The federal government=s objective in promulgating the standards is Ato eliminate or reduce@ the Aunreasonable risk of death and injury [that
disposable lighters pose] to consumers.@  16 C.F.R. ' 1210.5(e) (1993). 
The standards are set forth in 16 C.F.R. '
1210.1B.5 (1993) and are outlined, in relevant part, in the
footnote below.[4]  Generally speaking, the standards mandate
that at least 85 percent of children under age five must be unable to operate
disposable lighters.  

The parties agree that the plaintiff=s claim is not expressly preempted by federal
law.  See 15 U.S.C. ' 2074(a) (ACompliance with consumer product safety rules . . .
shall not relieve any person from liability at common law.@). 
Nevertheless, the plaintiff=s claim could be implicitly preempted by federal
law, as Bic argues.  The United States
Supreme Court has Arecognized that a federal statute implicitly
overrides state law either when the scope of a statute indicates that Congress
intended federal law to occupy a field exclusively, or when state law is in
actual conflict with federal law.@  Freightliner
Corp. v. Myrick, 514 U.S. 280, 287 (1995) (citations omitted).  The Supreme Court has also Afound implied conflict preemption where it is
impossible for a private party to comply with both state and federal requirements,
or where state law stands as an obstacle to the accomplishment and execution of
the full purposes and objectives of Congress.@  Id. (citations omitted).    








The only issue raised on appeal is whether the
plaintiff=s claim is preempted because it imposes standards
that would stand as Aan obstacle to the accomplishment and execution of
the full purposes and objectives@ of the federal government.  See id.  Specifically, Bic contends that the plaintiff=s claim is an Aobstacle to the accomplishment and execution . . . of
federal objectives@ because it imposes standards (1) raising the
minimum percentage of children who cannot operate the lighters and (2)
increasing the age (by two months) for children to be tested with the lighters.  See id.  The net effect of this rule, according to Bic,
is to make child-resistant lighters too difficult for adults to operate,
causing adults to switch to matches, a trend which would expose children to
greater risk.  We disagree. 

As discussed in greater detail in Part II, infra,
the plaintiff=s claim takes issue with the wide variance in the
J-26=s child resistance, not with the federal standard
regarding the minimum percentage of children who cannot operate the
lighters.  The plaintiff=s claim is based on the availability of safer
alternative designs that actually met the federal standard, were certified by
the Commission, and put into mass production by Bic.  According to the plaintiff, the wide variance
in child resistance of J-26 lighters rendered the J-26 design unreasonably
dangerous, especially given the availability of safer alternative designs that
did not exhibit such wide variances.  The
evidence adduced at trial shows that the wide variance could be eliminated even
without raising the minimum percentage of children who could not operate the
lighter.  In particular, the re-designed
J-26 had the same number of children operate it as the old J-26, but it did not
exhibit the same wide variance in child resistance.      

Having reviewed the evidence documented in Part II, infra,
as well as the arguments advanced by Bic, we are unable to conclude that the
plaintiff=s claim stands as an obstacle to the federal
objective Ato eliminate or reduce@ the Aunreasonable risk of death and injury [that
disposable lighters pose] to consumers.@  16 C.F.R. ' 1210.5(e). 
Any rule of law created by the plaintiff=s
claim would further the federal objective by prohibiting lighter designs that
allow for unreasonably wide variances in child resistance.  In this sense, the plaintiff=s claim complements and reinforces existing federal
standards.  








We also disagree that the plaintiff=s claim would increase the age of children used to
test lighters.  Throughout this
litigation, it has been Bic, not the plaintiff, that has invoked the age
issue.  After the plaintiff demonstrated
that the actual child resistance of J-26 lighters could be much lower than 90
percent, Bic argued that the difference in age between the child testers and
the child in this case rendered the test results Ano
evidence@ of a design defect. 
The tests results were irrelevant, according to Bic, because only
children under the age of five are covered by the federal standards and the
child in this case was five years and two months old.  The plaintiff, in turn, countered with
evidence that the test results were relevant because the child in this case had
developmental delays and functioned below the age of five.  The plaintiff=s
claim does not assert that the J-26 was defectively designed because Bic failed
to use children over the age of five in its tests.  The age issue arose as a defensive theory,
not as a defect theory.  As such, the
plaintiff=s claim would not create a rule of law raising the
age of children used to test lighters.  

In sum, we conclude that the plaintiff=s design-defect claim is not an obstacle to the
accomplishment and execution of any federal objectives regarding disposable
lighters.  Any rule of law created by the
claim would be in harmony with existing federal standards and further the
federal objectives, even if its net effect would be to make lighters safer for
children. Accord Colon v. BIC USA, Inc., 136 F. Supp. 2d 196, 208
(S.D.N.Y.  2000) (A[I]t is difficult to construe these [federal]
regulations as anything but a mandatory minimum standard with which all
manufacturers or importers [of disposable lighters] must comply.  By no means, however, should compliance with
this minimum standard automatically relieve a manufacturer or importer of state
common law liability.@).  Bic=s second issue is therefore overruled. 

II. 
Sufficiency of the Evidence 








Bic=s first, third, fourth, and seventh issues challenge
the legal and factual sufficiency of the evidence supporting the jury=s findings.[5]  Because legal and factual sufficiency
challenges are different evidentiary challenges, invoking different standards
of review, we evaluate them separately.[6]  We first address the legal and factual
sufficiency of the evidence to prove that the J-26 was defectively designed and
then address whether the evidence was legally and factually sufficient to prove
causation and malice.[7]

A.  Design
Defect 

In McKisson v. Sales Affiliates, Inc., 416
S.W.2d 787, 788B89 (Tex. 1967), the Texas Supreme Court adopted
section 402A of the Restatement (Second) of Torts on the scope of strict
products liability.  Restatement (Second) of Torts ' 402A (1965). 
Section 402A provides that 








 

(1) one who sells any product in a defective
condition unreasonably dangerous to the user or consumer or to his property is
subject to liability for physical harm thereby caused to the ultimate user or
consumer, or to his property, if

 

(a) the seller is engaged in the business of selling
such a product, and

 

(b) it is expected to and does reach the user or
consumer without substantial change in the condition in which it is sold. 

 

Id.  A product may be unreasonably dangerous
because of a defect in its marketing, design, or manufacture.  Am. Tobacco Co. v. Grinnell, 951
S.W.2d 420, 426 (Tex. 1997) (citing Caterpillar, Inc. v. Shears, 911
S.W.2d 379, 382 (Tex. 1995); Technical Chem. Co. v. Jacobs, 480 S.W.2d
602, 604B05 (Tex. 1972)). 
A product supplier is strictly liable for any such defects.  Id.; Restatement
(Third) of Torts '' 1, 2 (1998); Restatement
(Second) of Torts ' 402A (1965).








The jury found that the J-26 was defectively
designed and that the particular J-26 involved in the accident (Athe Subject Lighter@) was
defectively manufactured.  Because the
plaintiff needed to prevail on only one defect claim to recover, we must affirm
the award of actual damages if the evidence is legally and factually sufficient
to prove either a design or manufacturing defect. See Grinnell, 951
S.W.2d at 426 (stating that defects in marketing, design, or manufacture can
render a product unreasonably dangerous).[8]  For the reasons given below, we conclude that
there is both legally and factually sufficient evidence to support the jury=s finding of a design defect. We therefore do not
review the evidence supporting the jury=s finding of a manufacturing defect or any issues
related to that finding.  See Tex. R. App. P. 47.1.     

            A design defect exists only if a Asafer alternative design@ was available. 
Tex. Civ. Prac. & Rem. Code
Ann. ' 82.005(a) (Vernon 1997).  A design-defect claimant must also prove that
the product was defectively designed so as to be unreasonably dangerous, taking
into consideration the utility of the product and the risk involved in its
use.  Hernandez v. Tokai Corp., 2
S.W.3d 251, 257 (Tex. 1998); see also Restatement
(Third) of Torts ' 2 (1998) (AA product . . . is defective in design when the
foreseeable risks of harm posed by the product could have been reduced or
avoided by the adoption of a reasonable alternative design . . ., and the
omission of the alternative design renders the product not reasonably safe.@).  The risk‑utility
analysis involves consideration of several factors including the following:

 

(1) the utility of the product to the user and to
the public as a whole weighed against the gravity and the likelihood of injury
from its use;

 

(2) the availability of a substitute product which
would meet the same need and not be unsafe or unreasonably expensive;

 

(3) the manufacturer=s
ability to eliminate the unsafe character of the product without seriously
impairing its usefulness or significantly increasing its costs;

 

(4) the user=s anticipated awareness of the dangers inherent in
the product and their avoidability because of the general public knowledge of
the obvious condition of the product, or of the existence of suitable warnings
or instructions; and

 

(5) the expectations of the ordinary consumer. 

 








Tokai Corp.,
2 S.W.3d at 257 (citing Grinnell, 951 S.W.2d at 432).  The determination of whether a product is
unreasonably dangerous because of a design defect is often one that involves
factual disputes that a party is entitled to have a jury resolve.  Id. at 260.  The issue is one of law only if reasonable
minds cannot differ on the risk‑utility analysis considerations.  Id. at 261.     

1. 
Unreasonably Dangerous Product

Legal Sufficiency 

Bic argues that the evidence is insufficient to
prove a design defect because the Commission has certified the J-26=s compliance with federal regulations regarding
child-safety.  See 15 U.S.C. '' 2051B85; 16 C.F.R. ' 1210.1B.5.  According
to Bic, compliance with these regulations created a presumption of no design
defect that was never rebutted by the plaintiff.[9]  We disagree.








As noted above, the Act expressly states that
compliance will not relieve a party from liability at common law.  15 U.S.C. '
2074(a).  Thus, even a lighter meeting
the federal standards can be the subject of common law claims for products
liability against the manufacturer.  See
id.; Colon, 136 F. Supp. 2d at 208 (A[I]t
is difficult to construe these [federal] regulations as anything but a
mandatory minimum standard with which all manufacturers or importers [of
disposable lighters] must comply.  By no
means, however, should compliance with this minimum standard automatically
relieve a manufacturer or importer of state common law liability.@).  
Nevertheless, Texas statutory law is somewhat deferential to the
standards created by federal authorities. 
Section 82.008(a) of the civil practice and remedies code creates a Arebuttable presumption@ that
no design defect exists when a manufacturer=s
design complies Awith mandatory safety standards or regulations
adopted and promulgated by the federal government . . . .@  Tex. Civ. Prac. & Rem. Code Ann. ' 82.008(a) (Vernon 2005).  Bic acknowledges that this provision is
relatively recent and does not apply to the plaintiff=s claim, which was filed before the revisions became
effective on September 1, 2003, see Acts 2003, 78th Leg., ch. 204, ' 5.02; however, Bic maintains that common-law
precedent creates a similar Arebuttable presumption.@    

Although we agree that compliance with the federal
regulations is some evidence that no design defect exists, we conclude that, in
this case, the plaintiff=s evidence rebutted any no-defect presumption and is
both legally and factually sufficient to prove a design defect in the
J-26.  At trial, the plaintiff relied
heavily on Bic=s internal documents.  In particular, the plaintiff used Bic=s design specifications for the J-26 and results
from Bic=s child-resistance testing of the J-26, which Bic
supplied to the Commission pursuant to federal regulations.  See 16 C.F.R. ' 1210.1.  The
design specifications and test results demonstrate a wide variance in the J-26=s child resistance. 
The variance proved that the J-26 was unreasonably dangerous because it
could perform virtually as poorly as non-child-resistant lighters. 

Bic contends that the test results are no evidence
of a design defect because Jonas Carter, the child who started the fire, was
over the age of five and, thus, not within the scope of any governing design
standard for child-resistance testing. 
Jonas was five years and two months old at the time of the fire and
technically fell outside the class of children for whom the Commission=s child-safety protocol was designed.  See id. (stating that the Commission=s testing protocol is intended to make lighters
resistant to successful operation by children younger than five years of
age).  








The significance of Jonas=s age was contested before the jury.  The plaintiff put on evidence that Jonas had
problems with fine motor skills, suffered from attention deficit disorder, and
was developmentally delayed by two and a half years.  Based on this evidence, the jury could have
reasonably found that, despite Jonas=s age, the test results were useful in measuring the
effectiveness of the J-26=s child-safety features.  Indeed, it is difficult to intuit any
meaningful developmental difference between a child of Jonas=s age and a child just under the age of five.  No evidence was produced by Bic to establish
any significant developmental acceleration during this age span.  We have no basis for concluding, as Bic
argues, that the cognitive and motor abilities of a child Jonas=s age are so superior to a child just under the age
of five that the test results lack evidentiary value.  Given Jonas=s
mental and physical impairments and the marginal amount by which his age
exceeded five years, this Court cannot conclude that the test results amounted
to no evidence of a design defect.

To the contrary, for the reasons discussed in
greater detail below, we hold that the design specifications and test results,
in addition to other evidence and testimony, are legally sufficient to support
the jury=s finding of a design defect.  The results indicate that the J-26 could be
as little as 62.5 percent child resistant, even though the design
specifications certified by the Commission state that the J-26 is 90 percent
child resistant.  We affirm the jury=s design-defect finding based on this
discrepancy.    








Federal protocol requires manufacturers of
disposable lighters to test six surrogate lighters representing the Arange of forces@ necessary for operation of the lighter.  See 16 C.F.R. ' 1210.4.  As
discussed in note 4, supra, the Commission does not dictate the design
of lighters, nor does it designate the characteristics of child
resistance.  The Commission is solely
concerned with the percentage of children who can operate the surrogate lighters
and with ensuring that manufacturers produce lighters that actually fall within
the range of forces represented by the surrogates.  

Evidence was produced at trial regarding the five
characteristics by which Bic measured the range of forces necessary to operate
the J-26.  These were (1) shield force,
(2) shield movement, (3) sparkwheel rotation force, (4) fork force, and (5)
fork movement.  The characteristics work
together to prevent child operation.  At
the top of a Bic disposable lighter is a shield (or guard) that must be
depressed to operate the lighter.  The
first two characteristics were the force needed to depress the shield and the
distance the shield must move.  Once the
shield is depressed, the user must rotate the sparkwheel.  The force needed to move the sparkwheel was
Bic=s third characteristic.  The last two characteristics related to the
fork mechanism that releases butane gas to create a flame.  The fork is moved by a certain force and must
move a certain distance; thus, fork force and fork movement were the final two
characteristics.      

In the case of the J-26, the six surrogates produced
by Bic for testing had at least slightly different values for each of the five
characteristics outlined above.  The
plaintiff focused much attention on the variance among the surrogates in
sparkwheel rotation force.  According to
documents produced by Bic and submitted to the Commission, operation of the
J-26 required a sparkwheel rotation force between 2.3 and 3.7 pounds.  The six surrogates tested by Bic represented
most of this range, varying from 2.3 to 3.3 pounds of required force.  Relying on the test results discussed below,
the plaintiff argued that lighters produced at the lower end of this range were
dangerously less child resistant than lighters produced at the upper end of the
range. 








The six J-26 surrogates were tested by a panel of
100 children, with each surrogate being tested by 16 to 17 children.  The J-26 was certified as 90 percent child
resistant because only 10 out of 100 children managed to operate the six
surrogates, but the number of children operating the lighters was not evenly
distributed among the surrogates.  Only
three of the six surrogates were operated: 
Surrogate Two was operated by 3 out of 17 children, Surrogate Four was
operated by 1 out of 17 children, and Surrogate Five was operate by 6 out of 16
children.  Nine of the ten children who
operated a surrogate operated either Surrogate Two or Surrogate Five.  Lighters built to these specifications would
perform below the federal baseline of 85 percent:  Surrogate Two would be 82.4 percent
resistant, and Surrogate Five would be only 62.5 percent resistant.  Surrogate Five, the worst performer of the
group, also had the lowest sparkwheel rotation force:  2.3 pounds. 
Testing of the Subject Lighter after this lawsuit was filed revealed
that its sparkwheel rotation force is equal to or less than 2.3 pounds.[10]       








At trial, the plaintiff argued that Bic deliberately
inserted lower-performing surrogates, such as Surrogate Five, into groups of
lighters with better performances, such as the three surrogates which no child
could operate during the testing of the J-26. 
According to the plaintiff, this allowed Bic to meet the Commission=s protocol while still manufacturing lighters which
were only marginally, if at all, safer than non-child-resistant lighters.  Paul Adams, a Bic employee, testified that
without any enhanced child-resistance features, a so-called Aroll and press@ model lighter, such as Bic=s J-6, would be between 62 and 63 percent child
resistant, virtually the same as Surrogate Five.[11]  Thus, even though the J-26 was designed with
enhanced child-safety features and was certified as Achild resistant,@ it
could perform virtually the same as a lighter with no such features or
certification.  As the plaintiff argued,
the practical effect of this design was that children were left in as much
danger with the Achild-resistant@ J-26 as they were with non-child-resistant lighters
such as the J-6, which the Commission has concluded Apose an unreasonable risk of death and injury to
consumers.@  16 C.F.R. ' 1210.5(e).[12]








Indulging, as we must, every reasonable inference
deducible from the evidence in the plaintiff=s
favor, we conclude that the foregoing evidence rises to a level that would
allow reasonable and fair-minded people to differ in their conclusions.  Formosa Plastics Corp. USA v. Presidio
Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).  A reasonable and fair-minded person could
conclude that the design of the J-26 was defective and rendered the J-26
unreasonably dangerous because it allowed the lighter to be as little as 62.5
percent child resistant.  We are mindful
of the jury=s role in weighing the risk-utility factors outlined
by the supreme court and are reluctant to second-guess the jury=s determination. 
See Tokai Corp., 2 S.W.3d at 260B61
(risk-utility factors).  A reasonable and
fair-minded person could conclude that the J-26 was unreasonably dangerous
because (1) the utility of the J-26 was outweighed by the gravity and
likelihood of injury from its use; (2) a substitute product was available which
would meet the same need as the J-26 and not be unsafe or unreasonably
expensive; (3) Bic could have eliminated the wide-variance in the child
resistance of the J-26 without seriously impairing its usefulness or
significantly increasing its costs; and (4) ordinary consumers of Achild-resistant@ lighters, such as the J-26, expect such lighters to
be more child resistant than lighters which are not certified, marketed, or
sold as Achild-resistant@ lighters.[13]        

For evidence to be legally sufficient, reasonable and
fair-minded people must be able to differ in their conclusions.  Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995).  Unanimity
of conclusions is not required.  See
id.  Having concluded that a
reasonable and fair-minded person could find the J-26 to be unreasonably
dangerous, we overrule Bic=s third issue as it relates to the legal sufficiency
of the evidence to prove a design defect. 

Factual Sufficiency 








We also overrule Bic=s
third issue as it relates to the factual sufficiency of the evidence to prove
that the J-26 was unreasonably dangerous because of a design defect.[14]  Bic=s arguments on this point are largely the same as
its arguments challenging the legal sufficiency of the evidence.  For instance, Bic contends that certification
by the Commission should preclude a finding of a design defect and that Jonas=s age should render the evidence of a design defect
insufficient.  We have already considered
these arguments, and even in a neutral light, we cannot conclude the verdict is
so contrary to the great weight and preponderance of the evidence as to be
manifestly unjust, shock the conscience, or clearly demonstrate bias.  See Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761B62 (Tex. 2003). 
In reaching our holding, we are especially mindful of section 82.008(b)
of the civil practice and remedies code, which, though inapplicable in this
case, recognizes that Amandatory federal standards or regulations . . .
[can be] inadequate to protect the public from unreasonable risks of injury or
death.@  Tex. Civ. Prac. & Rem. Code Ann. ' 82.008(b). 

2.  Safer
Alternative Design 

We now turn to the evidence relating to the
availability of a safer alternative design, which Bic contends is legally and
factually insufficient.  In addition to
proving that the J-26 was unreasonably dangerous, the plaintiff had to prove
that (1) there was a safer alternative; (2) the safer alternative would have
prevented or significantly reduced the risk of injury, without substantially
impairing the product=s utility; and (3) the safer alternative was both
technologically and economically feasible when the Subject Lighter left Bic=s control.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 82.005(a)B(b); Gen. Motors Corp. v. Sanchez, 997 S.W.2d
584, 588 (Tex. 1999).








The Subject Lighter was made in October 1997.  At trial, there was some dispute as to which
design specifications and test results were applicable to the Subject
Lighter.  The plaintiff contended that
specifications and test results produced in 1995 were controlling, but Bic
countered with specifications and test results produced in 1997.[15]  The 1995 and 1997 specifications and test
results were different in the two years, owing, ostensibly, to a 1997 design
change in the J-26.  All of the documents
were discussed before the jury and received as evidence.  On appeal, Bic admits that Athere is evidence that the 1995 specifications
applied to the Subject Lighter.@  Reply Brief of Appellant, Bic Pen Corporation,
p. 13, n. 6.[16]  Because the parties agree that there is
evidence to prove that the 1995 specifications and test results apply to the
Subject Lighter and because there is no greater evidence to prove that the 1997
specifications and tests results apply, we have used the 1995 documents in our
analysis of whether the evidence is sufficient to prove the J-26 was
unreasonably dangerous.  We also use them
in the following analysis of whether a safer alternative design was available
to Bic.                                    

Legal Sufficiency 








The evidence adduced at trial established that
several safer alternative designs were both technologically and economically
feasible when the Subject Lighter left Bic=s control. 
Each of the alternative designs was created and put into mass production
by Bic.  The first design, the J-25, was
a Amini@ version of the J-26.  It was certified as 98 percent child
resistant, meaning that only 2 out of 100 children could operate it.  The second design, the J-16, was certified as
97 percent child resistant, meaning that only 3 out of 100 children could
operate it.  Neither of these designs
produced a dangerously wide variance in child resistance, as did the J-26.  

The third alternative was the redesigned J-26, which
became available prior to the manufacture of the Subject Lighter.  Bic changed the sparkwheel from a round wire
to a square wire, and the shield was changed from one to two pieces.  The redesigned J-26 also had different shield
force, fork force, and sparkwheel rotation force.  The redesigned J-26 was tested twice, once in
March 1997 and once in May 1997.  In the
March test, 4 out of 100 children were able to operate its surrogates, with no
more than two children operating the same surrogate.  In the May test, 10 out of 100 children were
able to operate its surrogates, with no more than three children operating the
same surrogate.  The redesigned J-26 was
thus less prone to wide variance in child resistance than its older
counterpart, even though the same number of children operated their surrogates
in the May test.








As discussed above, a wide variance in child
resistance rendered the J-26 unreasonably dangerous.  The performances of the J-25 and J-16 were
vastly superior to that of the J-26 because those models had almost no variance
among the surrogates.  Even the
redesigned J-26 performed more consistently than its older counterpart.  Based on the foregoing evidence, a reasonable
and fair minded person could conclude that, at the time the Subject Lighter
left Bic=s control, a safer alternative design was available
to Bic that would have prevented or significantly reduced the risk of injury
without substantially impairing the product=s
utility.[17]  Accordingly, we overrule Bic=s third issue as it relates to the legal sufficiency
of the evidence to prove the availability of a safer alternative design.

Factual Sufficiency

            In
arguing that the evidence is factually insufficient to prove a safer
alternative design, Bic contends that some consumers complained of difficulty
in operating the J-16, indicating that the product=s utility was diminished by its greater child
resistance.  Although the J-16 may have
been more difficult for adults to operate than the original J-26, Bic points to
no such evidence regarding the J-25 or the redesigned J-26.  Even if such evidence had been produced, it
would not necessarily prove that the product=s
utility was Asubstantially@ impaired, as required by statute.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 82.005(a)B(b).  Even
assuming arguendo that user complaints regarding the J-16 amounted to
some evidence of substantial impairment, Bic has not established that the jury=s finding is so contrary to the great weight and
preponderance of the evidence as to be manifestly unjust, shock the conscience,
or clearly demonstrate bias.  See
Golden Eagle Archery, 116 S.W.3d at 761B62.          Bic=s
third issue is therefore overruled.               

B.  Causation 








Bic also contends that the evidence is legally and
factually insufficient to prove that a design defect in the Subject Lighter
caused Brittany Carter=s injuries. 
Producing cause is the test for causation in strict liability
cases.  Union Pump Co. v. Allbritton,
898 S.W.2d 773, 775 (Tex. 1995).  A
producing cause is an efficient, exciting, or contributing cause, which in a
natural sequence, produced the injuries or damages of which the claimant
complains.  Id.  Proximate and producing cause differ in that
foreseeability is an element of proximate cause but not of producing
cause.  Id.  Common to both proximate and producing cause
is causation-in-fact, including the requirement that the defendant=s conduct or product be a substantial factor in
bringing about the plaintiff=s injuries.  Id.
 There may be more than one producing
cause.  Coleman v. Cintas Sales Corp.,
40 S.W.3d 544, 550 (Tex. App.CSan Antonio 2001, pet. denied).

It is not required that a witness conclusively state
that a product caused the plaintiff=s injury.  Kindred
v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).  The jury may determine causation based on
circumstantial evidence.  Id.[18]    In Kindred, for instance, the Texas
Supreme Court held that the jury could have determined a defective product
caused a fire because it was made of Aa very flammable mixture@ and was being used when the fire occurred.  Id. 
No direct testimony of causation was necessary.  See id.  

Legal Sufficiency 








The evidence adduced at trial shows that Jonas was
playing with the Subject Lighter, a model J-26 lighter produced by Bic, when he
accidently set fire to Brittany=s dress. 
Guided by Kindred, we conclude that a reasonable finder of fact
could infer from the circumstances of this case that the defective design of
the J-26 was a producing cause of Brittany=s injuries. 
The plaintiff proved that J-26 lighters could be just as ineffective at
preventing child operation as lighters that were not certified or marketed as Achild resistant.@  The plaintiff also produced evidence that the
Subject Lighter performed at the lower-end of Bic=s
design specifications, indicating that it was much easier for a child to
operate than other Achild-resistant@ lighters. 
The defective condition of the Subject Lighter enabled Jonas to operate
it, and Jonas=s operation of the Subject Lighter resulted in
Brittany=s injuries.  

The plaintiff had no burden to prove that the
defective design of the Subject Lighter was the only producing cause of
Brittany=s injuries.  See Coleman, 40 S.W.3d at 550.  The supreme court has specifically stated
that a child burn victim is not precluded from recovering against the
manufacturer of a defective lighter simply because he or she was burned as a
result of another child=s use of the lighter.  Tokai Corp., 2 S.W.3d at 257.  Thus, Jonas=s
actions would not preclude a finding of causation.  

The evidence discussed above rises to the level that
would allow reasonable and fair-minded people to reach different
conclusions.  We therefore overrule Bic=s challenge to the legal sufficiency of the
evidence.

Factual Sufficiency 








We also overrule Bic=s
challenge to the factual sufficiency of the evidence.  Bic argues that other circumstances of the
fire render the evidence of causation insufficient.  Bic points out that the children were
unsupervised at the time of the fire and that their mother used disposable
lighters to light her cigarettes.  Bic
also points out that it is unknown how long the children were alone prior to
the fire.  We will not overturn the jury=s verdict based on these considerations.[19]  They do not disprove that the Subject Lighter
was a producing cause of Brittany=s injuries, and they do not demonstrate that the
verdict is so contrary to the great weight and preponderance of the evidence as
to be manifestly unjust, shock the conscience, or clearly demonstrate
bias.  See Golden Eagle Archery,
116 S.W.3d at 761B62.  

In its factual sufficiency argument, Bic does not
contend that Jonas used a lighter other than the Subject Lighter to set fire to
Brittany=s dress, nor does Bic contend that the Subject
Lighter was not a model J-26.  Instead,
Bic argues that the circumstances of the fire outweigh the plaintiff=s evidence of causation.  We have reviewed these circumstances and do
not find that they greatly outweigh the evidence proving that the Subject
Lighter was a producing cause of Brittany=s injuries. 

Accordingly, Bic=s
first issue is overruled.      

C.  Malice   

Finally, we turn to the jury=s finding that Bic acted with malice, which Bic
contends is supported by legally and factually insufficient evidence.[20]  Malice is defined as

 

(A) a specific intent by the defendant to cause
substantial injury to the claimant; or

 

(B) an act or omission:

 

(i) which when viewed objectively from the
standpoint of the actor at the time of its occurrence involves an extreme
degree of risk, considering the probability and magnitude of the potential harm
to others; and

 

(ii) of which the actor has actual, subjective
awareness of the risk involved, but nevertheless proceeds with conscious
indifference to the rights, safety, or welfare of others.

 








Acts 1987, 70th Leg., 1st C.S., ch. 2, ' 2.12, eff. Sept. 2, 1987; amended by Acts 1995,
74th Leg., ch. 19, ' 1, eff. Sept. 1, 1995. [21]  In 1995, the legislature substituted malice
for gross negligence as the prerequisite for punitive damages, but it also
redefined malice, through the addition of subsection (B), to mirror the
definition of gross negligence articulated by the Texas Supreme Court in Transportation
Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994).  Mobil Oil Corp. v. Ellender, 968
S.W.2d 917, 921 n.2 (Tex. 1998). 
Consequently, prior precedent regarding gross negligence is relevant to
a finding of malice as redefined by the above provision.  See Ellender, 968 S.W.2d at 921 n.2.

Legal Sufficiency 

When viewed objectively, Bic=s production of the Subject Lighter involved an
extreme degree of risk.  We have already
documented evidence proving that the J-26 could be as ineffective at preventing
child operation as lighters that were not certified, marketed, or sold as Achild resistant.@  The federal government has officially
recognized the Aunreasonable danger@ posed
by such lighters and has promulgated standards to prevent them from reaching
children.[22]  On paper, Bic has complied with these
standards, even with the J-26.  The
evidence documented above, however, indicates that Bic has nevertheless
succeeded in selling Achild resistant@ lighters, including the Subject Lighter, that are
capable of performing just as poorly as non-child-resistant lighters.  








The jury found that the Subject Lighter was
defectively designed.  The evidence
supporting the jury=s finding demonstrates that the J-26 had a wide
variance in child resistance and that the Subject Lighter performed at the low
end of the variance, rendering it unreasonably dangerous.  All the evidence documenting the variance
came from Bic.  The evidence therefore
suffices to prove not only the variance but also Bic=s actual, subjective awareness of the variance and
the extreme degree of risk it created. 

At trial, Bic produced evidence that lighters with a
higher child resistance than the J-26 were disfavored by some consumers, who
would not purchase such lighters.  The
jury could have listened to such evidence and concluded that Bic had a profit
motive for producing lighters with the least child resistance allowable under
the federal standards.  The jury could
have concluded that the wide variance in the J-26 child resistance was
deliberate, that Bic deliberately inserted a low-performing surrogate into a group
of otherwise acceptable lighters with the intention of producing all of its
lighters at the low end of the specifications. 
The jury could have also concluded that this approach allowed Bic to
effectively circumvent the federal standards.     








This Court need not offer an opinion on the
evidence, except to hold that a reasonable trier of fact could review such
evidence and form a firm conviction or belief that Bic acted with malice
because it produced and sold the Subject Lighter with conscious indifference to
the extreme degree of risk it created.   See
In re J.F.C., 96 S.W.3d 256, 264B68 (Tex. 2002); see also Southwestern Bell Tel.
Co. v. Garza, No. 01‑1142, 2004 Tex. LEXIS 1424, *1B2 (December 31, 2004) (publication pending).  Any rule of law created by this precedent
would not force lighter manufacturers to sell Achild
proof@ lighters, as Bic argues.  The evidence before us indicates that no
lighter can be absolutely Achild proof.@  The same
evidence, however, strongly indicates that Bic was capable of producing and
did, in fact, produce much safer alternatives to the Subject Lighter.  As discussed above, the jury=s design-defect finding rests on Bic=s actual production and sale of safer lighters that
were certified by the Commission.  Thus,
no impossible standard is created by this decision. 

In its challenge to the legal sufficiency of the
evidence to prove malice, Bic also contends that exemplary damages are
unconstitutional because its conduct was legal in Connecticut, the state where
the Subject Lighter was manufactured.  See
BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 572 (1996) (holding that states
may not impose economic sanctions for violations of their laws with the intent
of changing tortfeasors= lawful conduct in other states).  No evidence or authority has been produced to
establish that Bic=s conduct was legal in any state.  There is also no indication in Bic=s appellate brief that this contention was raised at
trial or otherwise ruled on by the trial court. 
The plaintiff argues that Bic waived this issue by failing to raise it
at trial, an argument which is ignored in Bic=s
reply brief.  See  Tex. R.
App. P. 33.1(a).  Given the
complete absence of argument, evidence, and authority to establish that Bic=s conduct was legal in Connecticut, we overrule this
issue without reviewing its merits or deciding whether it was preserved.  See Tex.
R. App. P. 38.1(h) (AThe brief must contain a clear and concise argument
for the contention made, with appropriate citations to authorities and to the
record.@).

Factual Sufficiency   








In note 14, supra, we explained that Bic=s factual-sufficiency challenges are presented
together in a single issue in which Bic argues that the evidence is factually
insufficient to prove a defect, causation, or malice.  We have addressed this issue as three
different issues because it implicates three different findings, any one of
which may be independently challenged. 
The task has proven especially difficult with respect to the jury=s finding of malice. 
Bic=s single-issue approach does not discuss any
evidence contradicting the jury=s finding of malice. 
Instead, Bic points to evidence that arguably disproves the existence of
a defect and causation.  The evidence
relied upon by Bic has been discussed above, in sections of this opinion
dealing with design defect and causation. 
Although we understand that evidence contradicting the jury=s finding of a defect or causation could also
militate against a finding of malice, we have already held that the evidence in
this case is factually sufficient to prove a defect and causation.  To the extent that Bic=s single issue implicates the factual sufficiency of
the evidence to prove malice, it presents no additional evidence for this Court
to review.  Having viewed the record in a
neutral light, we cannot identify any evidence that would necessarily prevent a
reasonable fact finder from forming a firm conviction or belief that Bic acted
with malice.  Accordingly, we overrule
Bic=s challenges and hold that the evidence is legally
and factually sufficient to support the jury=s
finding of malice.  

III.  Expert
Testimony 

In its sixth issue, Bic argues that the trial court
erred in admitting testimony of two expert witnesses, William Kitzes and Thomas
Read.  Bic argues that neither of these
experts was qualified to give relevant testimony.  Their testimony was prejudicial, according to
Bic, because it was critical of Bic=s production testing, corporate safety policies, and
alleged violations of record-keeping requirements. 








The admission and exclusion of evidence is committed
to the trial court=s sound discretion. Gee v. Liberty Mut. Fire Ins.
Co., 765 S.W.2d 394, 396 (Tex. 1989). 
A party seeking to reverse a judgment based on evidentiary error need
not prove that but for the error a different judgment would necessarily have
been rendered; it must show only that the error probably resulted in an
improper judgment.  McCraw v. Maris,
828 S.W.2d 756, 758 (Tex. 1992); see also Tex. R. App. P. 44.1(a). 
A successful challenge to evidentiary rulings usually requires the
complaining party to show that the judgment turns on the particular evidence
excluded or admitted.  City of
Brownsville v. Alvarado, 897 S.W.2d 750, 753B54
(Tex. 1995).  We determine whether the
judgment turns on the challenged evidence by reviewing the entire record.  Id. at 754. 

Most, if not all, of the testimony of which Bic
complains relates to the plaintiff=s manufacturing-defect claim rather than its
design-defect claim.  In today=s decision, we have expressed no opinion on the
manufacturing-defect claim. 
Nevertheless, we have reviewed the entire record, even as it relates to
that claim, and cannot conclude that the judgment turns on the challenged
evidence.  Even if the testimony were
erroneously admitted, Bic has not established that the error had an effect on
the judgment.  This is especially true
because the judgment would be the same even if the jury had found that no
manufacturing defect existed.  To secure
the judgment, the plaintiff needed to prevail on only one defect claim.[23]  We have documented the evidence supporting
the plaintiff=s design-defect claim and the jury=s finding of malice and have in no way relied upon
the evidence of which Bic now complains.           








In concluding that the error, if any, did not
probably result in an improper judgment, we find the following considerations
significant.  Neither witness offered
direct testimony that the Subject Lighter was defectively designed or caused
Brittany=s injuries. 
Neither witness offered an opinion on whether Bic acted with
malice.  To the extent the witnesses
testified regarding the plaintiff=s design-defect claim, the testimony was mostly
limited to explaining the child-safety features of the Subject Lighter, the
testing protocol created by the Commission, and the results of such testing on
the J-26, the redesigned J-26, the J-16, and the J-25.  Similar testimony was given by Bic=s witnesses. 
There was some testimony from William Kitzes regarding the Subject
Lighter and how it compared to Surrogate Five and the J-26 design
specifications, but Bic=s counsel admitted on the record that such testimony
did not require an expert because it was simply a matter of Apointing to documents.@  Reporter=s Record, Volume 7, p. 63.  

For these reasons, Bic=s
sixth issue is overruled.             

IV.  Excessive
Interest 

In its eighth issue, Bic argues that the trial court
awarded excessive interest because the provisions of House Bills 4 and 2415
govern the interest rate applicable to the judgment in this case.[24]  We disagree. 









House Bills 4 and 2415 amended section 304.003(c) of
the finance code, reducing the effective post-judgment interest rate from ten
to five percent.[25]  The bills also changed the pre-judgment
interest rate, which is equal to the post-judgment interest rate applicable at
the time of the judgment.  Tex. Fin. Code Ann. ' 304.103 (Vernon Supp. 2004B05).  The
revisions of each bill apply to cases in which Aa
final judgment is signed or is subject to appeal on or after the effective date@ of the act.[26]   The provisions therefore apply if the
judgment in this case was signed on or after the effective date of either act,
or if the judgment became subject to appeal, that is, capable of being
appealed, on or after the effective date of the act.  SunBridge Healthcare Corp. v. Penny,
160 S.W.3d 230, 255 (Tex. App.CTexarkana 2005, no pet.).[27]  To determine the applicability of the bills,
we must first determine (1) the date each bill became effective, (2) the date
the judgment was signed, and (3) the date the judgment became appealable.  

 There is no
dispute that House Bill 4 became effective on September 1, 2003.  There is also no dispute that the judgment
was signed and became appealable on August 8, 2003.  See, e.g., Tesfa v. Stewart,
135 S.W.3d 272, 279 (Tex. App.CFort Worth 2004, pet. denied) (holding that a final
judgment can be appealed after it is signed by the judge).  Because the judgment was not signed on or
after the effective date of House Bill 4 and because it did not become subject
to appeal on or after that date, House Bill 4 does not apply in this case.  See Penny, 160 S.W.3d at 255.








            We must next determine whether House
Bill 2415 applies.  The parties dispute
when House Bill 2415 became effective. 
Bic argues that it took immediate effect upon signing by the governor on
June 20, 2003.  The plaintiff argues that
it could not have taken immediate effect because it was modified by Senate
Concurrent Resolution 66, which was not passed by the two-thirds majority
necessary for immediate action and because no record vote occurred.  According to the plaintiff, House Bill 2415
took effect, if at all, on September 1, 2003. 








Although most of our sister courts have stated,
either directly or indirectly, that House Bill 2415 took effect on June 20,
2003, none of the courts has addressed the issue raised by this appeal.[28]  When this Court previously held that House
Bill 2415 took effect on June 20, 2003, we did so without considering any arguments
regarding irregularities in the passage of the bill.  See In re Kajima Int'l, Inc., 139
S.W.3d 107, 117 (Tex. App.CCorpus Christi 2004, pet. denied).  We assumed it went into effect when the
governor signed it because Resolution 66 was not brought to our attention.  Id. (A[O]n
June 20, 2003, the Governor signed HB 2415, giving it an effective date of June
20, 2003.@).  In this
appeal, we decide the effective date of House Bill 2415 for the first time as a
legal issue.   In doing so, we note that
the outcome of In re Kajima Int'l would not be different under the
precedent created by today=s decision. 
Our holding in In re Kajima Int'l did not turn on the difference
between June 20, 2003 and September 1, 2003, as does this case.  In fact, the final judgment in In re
Kajima Int'l was signed on April 22, 2002, placing the case well outside
the scope of either effective date.  Id.
at 144.  The precedential value of In
re Kajima Int'l is therefore unaffected by today=s decision.      


We now turn to the governing authority on this issue.  In relevant part, the Texas Constitution
provides

No law passed by the Legislature, except the general
appropriation act, shall take effect or go into force until ninety days after
the adjournment of the session at which it was enacted, unless the Legislature
shall, by a vote of two-thirds of all the members elected to each House,
otherwise direct; said vote to be taken by yeas and nays, and entered upon the
journals. 

 

Tex. Const. art. III, ' 39.  The
Texas Supreme Court has stated that this provision also applies to amendments
and reports of conference committees.  Caples
v. Cole, 102 S.W.2d 173, 176 (Tex. 1937). 
Otherwise, a harmless bill might be passed in its inception by the
requisite vote and then be radically amended and such amendments be put into
immediate effect without the vote required by the Texas Constitution.  Id. 


On June 1, 2003, the legislature passed House Bill
2415 by more than a two-thirds majority vote of each house.  The vote was taken by yeas and nays, and the
results were duly recorded in the House and Senate Journals.  On June 2, 2003, the legislature adopted
Resolution 66, which amended House Bill 2415 by changing its cap on the
post-judgment interest rate from the yield on United States Treasury Bills to
the prime rate as published by the Federal Reserve Bank of New York.  The House and Senate Journals indicate that
the resolution Awas adopted without objection,@ but there is no indication that the resolution
passed by a recorded two-thirds majority vote taken by yeas and nays.[29]








Bic contends that Resolution 66 did not prevent
House Bill 2415 from taking immediate effect because it merely corrected Atechnical errors@
contained in House Bill 2415 and therefore did not trigger any requirement for
a new recorded vote on the amended bill. 
Although Resolution 66 uses the expression Atechnical errors@ to
describe the subject of its changes to House Bill 2415, the amendment appears
to affect a substantive provision of the bill. 
We cannot conclude that the changes are Aradical,@ but at the same time, they cannot be brushed aside
as purely Atechnical@ simply because that is the language used in the
resolution.  It is beyond the purview of
this Court to opine on the difference between the treasury yield and the prime
rate and the effect a change from one to the other would likely have on the
post-judgment interest rate.  Given our
limited knowledge in the matter, we apply the rule stated in Caples,
which does not distinguish between Aradical@ or Atechnical@ changes in requiring that all amendments and
reports of conference committees meet the requirements of section 39 of Article
III.  See Caples, 102 S.W.2d at
176.  Because the requirements  were not met in this case, we hold that House
Bill 2415 did not take immediate effect but went into force ninety days after
the adjournment of the 78th Regular Session of the Texas Legislature.  See Tex.
Const. art. III, ' 39.  

The judgment in this case was signed and became
appealable prior to the effective date of House Bill 2415.  Therefore, the trial court did not err in
refusing to apply House Bill 2415.  Bic=s eighth issue is overruled.  

 

 

 

 








V.  Conclusion

The judgment of the trial court is affirmed.  

 

 

DORI CONTRERAS GARZA,

Justice

 

Opinion delivered and filed 

this the 18th day of August, 2005.











[1] 
The award
of exemplary damages was later reduced to $750,000 in compliance with chapter
41 of the civil practice and remedies code. 
See Tex. Civ. Prac. &
Rem. Code Ann. ' 41.008 (Vernon Supp. 2004B05).   





[2] 
This statement of the issues is taken directly from Bic=s table of issues presented.  As discussed in note 14, infra, Bic=s factual-sufficiency challenges are
actually argued together in a single issue rather than separately.  This Court will nevertheless address them as
presented in Bic=s table of issues.    





[3]  Specifically, this Court does not decide and
expresses no opinion on Bic=s fourth and fifth issues, which
relate solely to the plaintiff=s manufacturing-defect claim.   In addition, this Court=s disposition of Bic=s first, second, sixth, and seventh
issues is strictly limited to those issues as they relate to the plaintiff=s design-defect claim.  We express no opinion on those issues to the extent
they involve the plaintiff=s manufacturing-defect claim.   





[4] Rather than dictating how lighters
are to be designed or what safety features they must include, the Commission
has adopted regulations detailing a protocol for testing disposable
lighters.  16 C.F.R. ' 1210.1. The regulations are
intended to make lighters resistant to successful operation by children younger
than five years of age.   Id.  The protocol requires testing of 100 randomly
selected children between the ages of 42 and 51 months.  See id. ' 1210.4.  The children are given two five-minute
opportunities to operate Asurrogate lighters,@ which have the same appearance and
design as the actual lighter but emit a signal, such as a light or noise,
rather than a flame.  See id.  Each child=s first attempt is undertaken without guidance from the
tester.  See id.  If a child=s first five-minute attempt is unsuccessful, the tester
demonstrates how to use the lighter and the child is given an additional five
minutes to operate the lighter.  See
id. ' 1210.4(f)(4).  A lighter passes the protocol if at least 90
percent of the 100 children cannot operate the lighter after two-five minute
attempts.  See id. ' 1210.4(h)(1).  If more than ten percent of the children
operate the lighter, a different group of 100 children is empaneled to test the
lighter.  See id.  The lighter passes the protocol if at least
85 percent of the 200 children cannot operate it.  See id. ' 1210.3(a). 





[5]  As stated above, we do not address any of Bic=s issues as they relate to the
plaintiff=s manufacturing-defect claim.  Accordingly, we do not decide and express no
opinion on Bic=s fourth issue, which challenges the
legal and factual sufficiency of the evidence to prove a manufacturing
defect.  





[6]  In conducting a legal sufficiency
review, all of the record evidence must be considered in a light most favorable
to the party in whose favor the verdict has been rendered, and every reasonable
inference deducible from the evidence is to be indulged in that party=s favor.@ 
Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,
960 S.W.2d 41, 48 (Tex. 1998); see also Bradford v. Vento, 48 S.W.3d
749, 754 (Tex. 2001).  If more than a
scintilla of evidence supports the challenged finding, the no‑evidence
challenge must fail. Wal‑Mart Stores, Inc. v. Canchola, 121 S.W.3d
735, 739 (Tex. 2003); see also Gen. Motors Corp. v. Sanchez, 997 S.W.2d
584, 588 (Tex. 1999).  More than a
scintilla of evidence exists where the evidence supporting the finding, as a
whole, Arises to a level that would enable
reasonable and fair‑minded people to differ in their conclusions.@ 
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.
1995).  

 

In conducting a factual sufficiency
review, we view all the evidence in a neutral light to determine whether the contested
finding is so contrary to the great weight and preponderance of the evidence as
to be manifestly unjust, shock the conscience, or clearly demonstrate
bias.  Golden Eagle Archery, Inc. v.
Jackson, 116 S.W.3d 757, 761B62 (Tex. 2003).





[7]  The statement of facts in Bic=s appellate brief discusses some
confusion as to whether the lighter involved in the fire (Athe Subject Lighter@) was actually a J-26 lighter.  Bic=s statement of facts refers to evidence that other lighters
were recovered from the scene; however, Bic raises no issue as to the legal and
factual sufficiency of the evidence to prove that the Subject Lighter was a
J-26.  Accordingly, we do not address the
legal or factual sufficiency of the evidence to prove that the Subject Lighter
was a J-26.  Nevertheless, we find it
worthwhile to note that the jury was asked only whether Athe Subject Lighter@ had a defect that caused Brittany=s injuries.  The jury charge defined Athe Subject Lighter@ as Athe white Bic lighter marked as
Plaintiff=s Exhibits 1 and 1A,@ which the undisputed testimony established
to be a J-26 model lighter produced by Bic.                





[8] 
The third
question of the jury charge authorized the jury to award actual damages if
Brittany Carter=s injuries were caused by either a
manufacturing or a design defect in the Subject Lighter.    





[9]  To support its argument regarding
the no-defect presumption, Bic cites GMC v. Harper, 61 S.W.3d 118, 124
(Tex. App.CEastland 2001, pet. denied) (ACompliance with NHTSA regulations
provides a presumption of no design defect.@) and Sims v. Washex Mach. Corp., 932 S.W.2d 559, 565
(Tex. App.CHouston [1st Dist.]1995, no pet.)
(relying on precedent from the Fifth Circuit Court of Appeals for the
proposition that A[c]ompliance with government
regulations is strong evidence, although not conclusive, that a machine was not
defectively designed@) (citing Lorenz v. Celotex Corp.,
896 F.2d 148, 150‑51 (5th Cir. 1990); Ellis v. K‑Lan Co.,
695 F.2d 157, 161‑62 n.4 (5th Cir. 1983)). 

 





[10]  The plaintiff=s evidence indicates that the
Subject Lighter=s sparkwheel rotation force is 2.12
pounds.  At trial and on appeal, Bic
maintains that the Subject Lighter=s sparkwheel rotation force is 2.3 pounds.  Brief
of Appellant, Bic Pen Corporation, p. 28.  





[11] 
The term Aroll and press@ describes the action necessary to
operate the lighter:  the user must
rotate or Aroll@ the spark wheel and depress the
thumb lever.  





[12]  The Commission also offered the
following evidence to support its standard:

 

The standard is designed to reduce
the risk of death and injury from accidental fires started by children playing
with lighters.  From 1988 to 1990, an
estimated 160 deaths per year resulted from such fires.  About 150 of these deaths, plus nearly 1,100
injuries and nearly $70 million in property damage, resulted from fires started
by children under the age of 5. 
Fire-related injuries include thermal burnsCmany of high severityCas well as anoxia and other, less
serious injuries.  The annual cost of such
fires to the public is estimated at about $385 million (in 1990 dollars).  

 

16 C.F.R. ' 1210.5(a).  





[13] 
The second
and third considerations enumerated above deal with the availability and
feasibility of a safer alternative design. 
The evidence supporting these considerations is discussed in detail in
the following section titled ASafer Alternative Design,@ infra, Part II A
2.  The fourth consideration is supported
by user complaints that the J-26 was not actually child-resistant.    





[14] 
Although
the table of issues presented in Bic=s appellate brief lists its factual-sufficiency challenges
as four separate issues, Bic actually argues its factual-sufficiency challenges
together in a single issue.  Because each
factual-sufficiency challenge is a separate issue and must be given individual
consideration, we address Bic=s four issues separately. 





[15]  The 1995 test results were generated from
tests actually conducted in October 1994. 
The test results were sent to the Commission in January 1995.   For simplicity, the test results will be
referred to as the 1995 test results, because that is when they were sent to
the Commission and when the Commission certified the J-26.   





[16] At trial, the plaintiff produced
evidence that, during depositions, Bic=s representatives identified the 1995 specifications as
being applicable to the Subject Lighter. 






[17]  The undisputed evidence also shows that Bic
actually manufactured and sold the J-25, J-16, and redesigned J-26.  This proves, at least circumstantially, that
those designs were economically feasible. 
In addition, there was direct evidence that the cost of manufacturing
the J-16 was only $0.0012 greater per unit than the cost of manufacturing the
J-26.   





[18]  The Texas Supreme Court has long held that
causation may be proved by circumstantial evidence.  See Gladewater v. Pike, 727
S.W.2d 514, 518 (Tex. 1987) (A[C]ircumstantial evidence and
inferences therefrom are a sufficient basis for a finding of causation.@); Farley v. M M Cattle Co.,
529 S.W.2d 751, 755 (Tex. 1975) (AProximate cause, like any other ultimate fact, may be
established by circumstantial evidence.@); Lynch v. Ricketts, 314 S.W.2d 273, 275B76 (Tex. 1958) (AIt is well settled . . . that
negligence and causation, like any other ultimate fact, may be established by
circumstantial as well as direct evidence.@);  Peveto v. Smith,
133 S.W.2d 572, 576 (Tex. 1939) (relying on circumstantial evidence to prove
negligence and causation).





[19] There was evidence that the
children were being supervised by their sixteen-year-old sister, who was in a
different room at the time of the fire. 
In its reply Brief, Bic concedes that the children=s sister was in the apartment but
nevertheless argues that the children were unsupervised because their sister
was actually in a different room watching television.  See Reply
Brief of Appellant, Bic Pen Corporation p.2, n.1.    





[20] 
Because
malice must be proved by clear and convincing evidence, an elevated standard of
proof, we apply a more exacting sufficiency review on appeal by looking at all
the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its
finding of malice was true.  See In re
J.F.C., 96 S.W.3d 256, 264B68 (Tex. 2002); see also
Southwestern Bell Tel. Co. v. Garza, No. 01‑1142, 2004 Tex. LEXIS
1424, *1B2 (December 31, 2004) (publication
pending).  





[21] The current version of this
provision is found in section 41.001 of the civil practice and remedies code. Tex. Civ. Prac. & Rem. Code Ann. ' 41.001(7) (Vernon Supp. 2003).  Section 41.001 of the Texas Civil Practice
and Remedies Code was amended by Act of June 2, 2003, 78th Leg., ch. 204, ' 13.02, 2003 Tex. Gen. Laws 847, 887, eff. Sept. 1, 2003, but section
23.02(d) of Acts 2003, 78th Leg., ch. 204 provides that A[a]n action filed before the
effective date of this Act . . . is governed by the law in effect immediately
before the change in law made by this Act, and that law is continued in effect
for that purpose.@ 
The instant action was filed prior to September 1, 2003 and is therefore
governed by the version of section 41.001 that was in effect prior to September
1, 2003.  All citations to section 41.001
in this opinion refer to the version in effect prior to September 1, 2003.   





[22]  See notes 4 and 12, supra.  





[23] See note 8, supra.  





[24] 
See Act of June 2, 2003, 78th Leg.,
R.S., H.B. 4, ' 6.01 (House Bill 4); Act of June 2,
2003, 78th Leg., R.S., ch. 676, ' 1 (House Bill 2415).





[25] 
Although House Bills 4 and 2415 are different acts, they contain almost
identical revisions to the post-judgment interest provisions of the finance
code.  In this regard, they differ only
in that House Bill 4 contains a provision prohibiting pre-judgment interest on
future damages. Compare Act of June 2, 2003, 78th Leg., R.S., H.B. 4, ' 6.02 (House Bill 4) with Act
of June 2, 2003, 78th Leg., R.S., ch. 676, ' 1 (House Bill 2415).





[26] See Act of June 2, 2003,
78th Leg., R.S., H.B. 4, ' 6.04 (House Bill 4); Act of June 2,
2003, 78th Leg., R.S., ch. 676, ' 2(a) (House Bill 2415). 





[27] 
See also City of Dallas v. Redbird Dev. Corp., 143 S.W.3d 375,
388B89 (Tex. App.CDallas 2004, no pet.); Columbia
Med. Ctr. of Las Colinas v. Bush, 122 S.W.3d 835, 865 (Tex. App.CFort Worth 2003, pet. denied).





[28]  SunBridge Healthcare Corp. v.
Penny, 160 S.W.3d
230, 254 (Tex. App.CTexarkana 2005, no pet.) (AHouse Bill 2415 or House Bill 4 (or
both), effective June 20, 2003, and September 1, 2003, respectively . . . .@); 
Pringle v. Moon, 158 S.W.3d 607, 610 n.2 (Tex. App.CFort Worth 2005, no pet.) (AWe note that the five percent
prejudgment interest rate actually went into effect on June 20, 2003 by virtue
of House Bill 2415.@); Sibley v. RMA Partners., L.P.,
138 S.W.3d 455, 460 n.3 (Tex. App.CBeaumont, no pet.) (stating that House Bill 2415 was
effective on June 20, 2003); Columbia Med. Ctr. of Las Colinas v. Bush,
122 S.W.3d 835, 866 (Tex. App.CFort Worth 2003, pet. denied)
(holding, implicitly, that House Bill 2415 was effective June 20, 2003); see
also Springs Window Fashions Div., Inc. v. Blind Maker, Inc., No. 03‑03‑00376‑CV,
2005 Tex. App. LEXIS 5949, *127 n.48 (Austin, July 29, 2005, no pet. h.) (publication
pending) (stating that the effective date of House Bill 2415 was June 20,
2003); City of Houston v. Fletcher, No. 11‑03‑00200‑CV,
2005 Tex. App. LEXIS 4481, *35 (Eastland, June 9, 2005, no pet. h.)
(publication pending) (stating that the effective date of House Bill 2415 was
June 20, 2005); Bennett v. Cochran, No. 14‑00‑01160‑CV,
2004 Tex. App. LEXIS 3545, *24 (Houston [14th Dist.] April 22, 2004, no pet.)
(publication pending) (AThe effective date of this act was
June 20, 2003.@).      

  

 





[29]  In its reply brief, Bic appears to concede
that Resolution 66 was not passed by the required two-thirds vote.  See Reply
Brief of Appellant, Bic Pen Corporation p. 21.